785 S.W.2d 619 (1990)
In The Matter of the ESTATE OF Bernard G. HYSINGER, Deceased.
Vaughn G. HYSINGER and Lana Hysinger, Petitioners-Respondents,
v.
Francis J. HEENEY, Respondent-Appellant.
No. 56510.
Missouri Court of Appeals, Eastern District, Division Five.
January 16, 1990.
Motion for Rehearing and/or Transfer Denied February 14, 1990.
Application to Transfer Denied April 17, 1990.
Isadore Scher, St. Louis, for respondent-appellant.
Norah Josephine Ryan, St. Louis, for petitioners-respondents.
Motion for Rehearing and/or Transfer to Supreme Court Denied February 14, 1990.
*620 JOSEPH J. SIMEONE, Senior Judge.
This is a proceeding to determine title to certain bank accounts in the names of Bernard G. Hysinger, the deceased, and Francis J. Heeney held in joint tenancy with right of survivorship. The probate division of the circuit court, after a hearing, determined that the accounts belonged to the estate of Bernard G. Hysinger and entered judgment on March 28, 1989, in favor of the estate and Charles R. Oldham as personal representative thereof, against the appellantFrancis Heeney, for the balance of funds in the accounts for a total of $18,387.83 plus interest from February 15, 1989 and expenses. We reverse and remand with directions.
These proceedings began with the filing of a petition on January 22, 1988, to determine title to certain bank accounts, filed by the decedent's son, Vaughn and his wife, Lana Hysinger. The petition alleged that the decedent, Bernard G. Hysinger was the owner of certain monies on deposit in two accounts and that the accounts belonged to the estate, despite the fact that the monies were in joint names. The petition alleged that the decedent placed the name of Francis J. Heeney on the accounts with decedent's own money in order to assist him in the writing of checks and payment of bills; that the decedent did not intend to create a joint tenancy and that the petitioners were the rightful owners of the proceeds in the accounts. They prayed that the court determine the nature of the interests in the accounts and direct the delivery of the monies to be paid to the personal representative of the estate.
A hearing was held on the petition in January 1989 before the probate division. The hearing revealed the following.
Bernard G. Hysinger, a man of 76 years of age, died on January 6, 1986. He was survived by his son, Vaughn G. Hysinger, a resident of California. Vaughn is married. The deceased had been in the Coast Guard, and when he was discharged, he was in the enviable position of not having to work because his parents owned "quite a number of acres of land in Indiana and Illinois." While in the Coast Guard he was a mechanic. Bernard's wife, Rosalee, died in 1977. Bernard had been acquainted with the appellant, Francis J. Heeney, an elderly gentleman, since sometime prior to 1976. Often, Bernard would come to Heeney's home to look at the creek behind Heeney's house. After Bernard's wife died in 1977, Heeney often saw Bernard at a tavern and restaurant, located at Grant and Olive in St. Louis County, owned by Drexal Chaney.[1] The two often conversed. Sometimes Bernard got drunk and Heeney would drive him home. At the request of Bernard, Heeney performed many personal services for Bernardsuch as repairing appliances, shopping and obtaining groceries. At some point, probably in 1979, Bernard asked Heeney to take him to the Charter Bank to open up an account. The two men went to the Charter Bank of Overland (which later became the Boatmens' Bank) and the employee asked Bernard if he wanted Heeney's name on the account. Bernard answered, "yes." When he was asked whether he wanted his son's name on the account, Bernard replied, "no." Two accountsa savings and checkingwere opened. A signature card, signed by Bernard Hysinger and Francis Heeney shows that a savings account was opened on November 21, 1979 and a checking account was opened on October 16, 1980. Although there were two dates on the card, Heeney testified that the accounts were opened on the same day. The custodian of the records at Boatmens could not explain the discrepancy. The signature card had a check mark next to the letters JT.WROS (joint tenants with right of survivorship). All of the funds placed in the account belonged to Bernard. The total amount deposited was $15,788.68. Heeney never requested Bernard to open an account in joint names. In fact, Heeney testified that "he [Bernard] asked me [Heeney] if he could *621 put my name on it [account] because I was doing his shopping [and] I was taking him to the doctor when he wanted to go for a physical." He also testified that Bernard stated that he was the only one "I can depend on when I need something done," and on several occasions said, "when I'm gone, you just close out that account." When Bernard died in January, 1986, Heeney, on the same day, closed out the account and placed the proceeds in a joint account in his name and in his son's name, Daniel F. Heeney. One witness testified that Bernard said, on one occasion, that Heeney was "his angel" and that "he owed him everything and that somehow he would reward him or pay him."
At the hearing to determine title, the attorney for Bernard testified. The attorney had represented Bernard for over thirty years. In 1980, Bernard wanted a codicil drawn to his will, but the attorney drew a new will in October, 1980. In a handwritten note to the attorney, Bernard wrote that, as to the Charter Bank of Overland account, "after all of the expenses [are] paid all of these accounts plus my part of [the home at] 8301 Archer and all of my household belongs [to] Vaughn."
The will provided for the care of his dog, and directed that the Collier Funeral Home should handle the arrangements and all the rest of his property should go to his son, Vaughn. The attorney testified that he and Bernard discussed the various accounts and that he wanted the property he owned, including the accounts, to go to Vaughn under the will. The attorney did not know that there were accounts in joint names. Vaughn Hysinger, who testified at the hearing, referred to a letter from his father which stated that Bernard established several accounts, including the Charter Bank Account, and that all these accounts are "in my will for you."
The custodian of records at Boatmens' Bank testified that Boatmens had taken over the Charter Bank of Overland. She produced a signature card signed by Bernard and Heeney; she testified that there was only one signature card, but she couldn't tell from the card what the two dates1979 and 1980meant. The card, as stated, had a notation "JT.WROS" with a check mark.
At the close of the hearing, counsel for the petitioners, the Vaughns, contended that, even assuming that a joint account had been opened in the names of Bernard and Heeney, a "mistake" was made in that Bernard did not understand that the survivor, Heeney, would receive the proceeds of the joint account. This "mistake" was shown by Bernard's notes to his attorney and correspondence with his son indicating that he intended to give all his property to his son, Vaughn. Since Bernard continued to believe that the money in the joint account would be part of his estate, it would go to Vaughn, he had a "mistaken belief," as to the nature of the accounts. No contention was made that Bernard suffered from any mental incapacity; nor was there any contention that a fraud or undue influence was practiced upon Bernard.
On March 28, 1989, the probate division issued its "Order Determining Title To Property." In that Order, the court recognized that § 362.470, R.S.Mo.1986, dealing with joint bank accounts, had been complied with and that compliance with the statute constitutes conclusive evidence that the surviving owner of such an account is entitled to the balance, regardless of who deposited the money, absent fraud, undue influence, mistake or mental incapacity. The court, however, stated that despite compliance with the statute, an interested party has an opportunity to show whether or not the decedent was "mistaken as to his intention as to who should receive the balances in the accounts upon his death ..." In order to do this, the court examined the intention of the decedent as shown by his notes, writings and testimony of others. The court found that the evidence shows that decedent was mistaken as to the law regarding the disposition of the funds in the joint accounts. This was shown by the testimony of decedent's attorney and his notes and correspondence. The evidence shows, the court concluded, that the decedent did not understand that the "law" provided that a surviving joint owner who contributed no funds was entitled to the *622 balance in the accounts. "He was mistaken as to the law." The court further concluded that decedent was mistaken as to the facts because he did not understand that these were joint accounts and did not understand that the signature card did not express his intention that the balance should go to his estate.
The court therefore found that (a) the decedent was mistaken as to the law because he did not understand the legal effect of the joint accounts that the survivor was entitled to the balance in the accounts upon his death, (b) the decedent was unilaterally mistaken as to the facts since decedent did not understand the meaning of the words and markings on the signature card, and (c) the decedent's intent was that the balance of the accounts, upon his death, should be considered as part of his estate to be distributed under the will, and that it was not his intent to have the balance in the joint accounts paid to the survivor, Heeney. Since decedent was mistaken as to the law and unilaterally mistaken as to the facts, and since a unilateral mistake permits recission of an agreement,[2] the court rescinded the agreement evidenced by the signature card, and entered judgment in favor of the personal representative of the estate in the amount of $18,387.33 ($15,788 originally deposited plus accrued interest) and interest from February 15, 1989 plus expenses.
Respondent, Vaughn G. Hysinger, has filed a motion to dismiss the appeal for the reason that the personal representative of the estate did not receive a notice of appeal. The notice of appeal was served on the attorney for the respondents. The personal representative, pursuant to a motion to dismiss the petition was added as a party to the proceeding in the probate division. Since the personal representative is a party to this proceeding, the motion to dismiss the appeal is denied. Rule 81.08(d).
On appeal, appellant, Heeney, contends that the court erred in ruling that there was a mistake by decedent in making the joint accounts and that the decedent did intend to establish joint accounts, the legal effect of which would entitle him to the balance in the accounts upon the decedent, Hysinger's death. He contends that (a) the court erred in its interpretation of LaGarce, infra, and in its interpretation of the joint account statute, § 362.470, R.S. Mo.1986, (b) in ruling that a mistake of law and a unilateral mistake of fact were sufficient to rescind the joint account agreement, and (c) the court erred in concluding that decedent's intent was contrary to the establishment of the joint account statute so as to have the balance of the accounts paid to his estate and not to the survivor. The respondents contend otherwise and assert that the evidence was sufficient to show a mistake to overcome the statutory presumption of § 362.470.
The scope of our review is governed by Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). The order and judgment of the trial court must be sustained unless there is no substantial evidence to support it, or unless it is against the weight of the evidence or unless it erroneously declares or applies the law. Hawkins v. Allison, 764 S.W.2d 719, 727 (Mo.App.1989).
Prior to the landmark decision of the Supreme Court in In re Estate of LaGarce, 487 S.W.2d 493 (Mo.1972) (LaGarce I), Missouri case law had held that under the joint deposit statutes,[3] there was a rebuttable presumption that deposits to accounts held as joint tenants with right of survivorship became the property of those tenants. Deposits made and accounts created, presumptively became the property of the persons named as joint tenants, and absent competent evidence to the contrary showing a different intent, fixed the ownership in the funds in the persons named as joint tenants. The presumption was rebuttable and could be overcome by evidence showing a different intent. Peters v. Carr, 654 S.W.2d 317, 321 (Mo.App.1983); see cases *623 collected in Melton v. Ensley, 421 S.W.2d 44, 51 (Mo.App.1967); Jenkins v. Meyer, 380 S.W.2d 315 (Mo.1964); Wantuck v. United Savings and Loan Ass'n, 461 S.W.2d 692 (Mo. banc 1971); Estate of Huskey v. Monroe, 674 S.W.2d 205, 210 (Mo. App.1984).
But the Supreme Court in LaGarce I, relying upon the then applicable statute, § 369.150, R.S.Mo.1969, held that there "is nothing in the statute which would warrant the conclusion that a rebuttable presumption is created" and that it "may be shown by competent evidence that it was not a joint tenancy even though the statutory form had been complied with." LaGarce, 487 S.W.2d at 500. Accordingly, the court overruled earlier decisions and held that the statute creates a statutory joint tenancy. The court said that:
It is our view that if the statute is complied with, in the absence of fraud, undue influence, mental incapacity or mistake, the survivor will become the owner of the account.
487 S.W.2d at 501.
Under LaGarce, absent the factors named, there is an irrebuttable or conclusive presumption of ownership in the surviving joint tenant. In re Estate of Mapes, 738 S.W.2d 853, 854 (Mo. banc 1987); Peters v. Carr, supra, 654 S.W.2d at 321. LaGarce has been reaffirmed in Pollock v. Brown, 569 S.W.2d 724, 731 (Mo. banc 1978); McGee v. St. Francois County and Loan Association, 559 S.W.2d 184 (Mo. banc 1977); and In re Estate of Mapes, supra, see Crider v. Steinberg, 721 S.W.2d 778, 779 (Mo.App.1986); Blue Valley Federal Sav. and Loan v. Burrus, 637 S.W.2d 737, 742 (Mo.App.1982).
Section 362.470, R.S.Mo., 1986, the applicable statute in this proceeding, as amended in 1977, provides in part:
1. When a deposit is made by any person in the name of the depositor and any one or more other persons, whether minor or adult, as joint tenants or in form to be paid to any one or more of them, or the survivor or survivors of them and whether or not the names are stated in the conjunctive or disjunctive or otherwise, the deposit thereupon and any additions thereto made by any of these persons, upon the making thereof, shall become the property of these persons as joint tenants, and the same ... shall be held for the exclusive use of the persons so named, and may be paid to any one of such persons during his lifetime, or to any one of the survivors of them after the death of any one or more of them. The making of a deposit in such form,... in the absence of fraud or undue influence, shall be conclusive evidence... of the intention of all the parties to the account to vest title to the account... in the survivor.
The decision in LaGarce, was therefore given the force of statute. Estate of Huskey v. Monroe, supra, 674 S.W.2d at 210. Under the statute, the intent of the General Assembly is to permit a depositor two alternatives: (1) either make the deposit payable to the depositors as joint tenants or (2) otherwise make the account payable to one or more of the depositors or the survivor or survivors of them. It is immaterial whether the names are "A and B," "A" or "B" or simply "A, B." Estate of Huskey, supra, 674 S.W.2d at 211; Estate of Plummer v. Fritsch, 706 S.W.2d 573, 575 (Mo.App.1986) certificates payable to A or B or either does not satisfy statute. If the statute is not complied with, no statutory joint tenancy is created. Matter of Estate of Meyer, 744 S.W.2d 844 (Mo.App.1988); Estate of Plummer v. Fritsch, supra, 706 S.W.2d 573.
Under these principles, the issue which requires resolution is whether the court misapplied or erroneously declared the law when it entered its order declaring that the joint accounts belonged to Bernard's estate because there was a mistake of law and a unilateral mistake of fact. The resolution of the issue requires an interpretation of the meaning of the reference in LaGarce that if the statute is complied with, the survivor will become the owner of the joint account "in the absence of fraud, undue influence, mental incapacity or mistake."
Where there is fraud or undue influence, the courts have, in accordance with *624 § 362.470[4] recognized that the conclusive presumption is rebutted so that the survivor is not entitled to the proceeds of the account. In re Estate of Mapes, supra, 738 S.W.2d at 854; In re Estate of Hayes, 658 S.W.2d 956, 958 (Mo.App.1983) (no undue influence); Hawkins v. Allison, 764 S.W.2d 719 (Mo.App.1989) (no undue influence).
The word "mistake" is generally used in the law to refer to an erroneous belief not in accord with the facts. Restatement (Second) Contracts, § 151. The word does not mean an improvident act that is the result of an erroneous belief; the erroneous belief must relate to the facts as they exist at the time of making the agreement. Pomeroy, in his work on Equity Jurisprudence defines mistake as an "erroneous mental condition, a conception on the understandingerroneous indeed, but none the less a convictionwhich influences the will and leads to some outward manifestation...." 2 J. Pomeroy's, Equity Jurisprudence, § 839 (4th ed. 1918); see also, Sprung v. Negwer Materials, Inc., 775 S.W.2d 97, 105 (Mo. banc 1989) (Sprung II) (Robertson, J. dissenting).
To justify a recission because of a mistake, the mistake must relate to the existence or non-existence of a fact, past or present, material to the agreement and not to a future contingency. The mistake must be as to a matter of fact, rather than law, and must be as to a fact constituting the basis of the agreement. Smith v. Githens, supra, 271 S.W.2d at 378-9.
Traditionally, a document or an agreement may be rescinded or reformed when there is a mutual mistake of material factwhere each party labors under the same misconception, and the mistake is a common one that neither party intended. The evidence showing such mistake must be clear, cogent and convincing. Grossman Wrecking Co. v. Bituminous Casualty Corp., 518 S.W.2d 719, 725 (Mo.App. 1975); Smith v. Githens, supra, 271 S.W.2d at 379; 25 Am.Jur.2d Equity, § 33 at 555 (1966); J. Calamari and J. Perillo, Contracts, § 9-26 (1970); 1 MO. Bar CLE, Civil Actions, § 7.48 (1980); Restatement (Second) Contracts, § 152.
A mistake may also be a unilateral one. A unilateral mistake occurs when only one party has an erroneous belief as to the facts. In this situation courts show a lack of sympathy for a claim that one party did not understand the consequences of an act and, in general, courts are very reluctant to allow one party or his representative to avoid a document or agreement for a mistake that was not shared by the other. Although traditionally there has been reluctance to allow a unilateral mistake to avoid an agreement, this strict view has, in limited instances been softened, and a limited right of avoidance has been recognized. It has been stated that there may be relief by way of recission for such a mistake when the other party knows of the mistake or it is so obvious that it should have been known. Smith v. Githens, supra, 271 S.W.2d at 379, relying on Saline County v. Thorp, 337 Mo. 1140, 88 S.W.2d 183 (Mo. 1935); MO. Bar CLE, Civil Actions, § 7.48; Calamari, supra, § 9-27 at 306; H. McClintock, Equity, 242-243 (1948); E.A. Farnsworth, Contracts, § 9.4 (1982). Recently, there has been a tendency to permit avoidance for a unilateral mistake when enforcement would be unconscionable and relief would impose no substantial hardship on the other party. Calamari, supra, § 9-27; Restatement (Second) Contracts, § 153. The Restatement recognizes that relief may be given for a unilateral mistake when (a) the effect of the mistake is such that enforcement would be "unconscionable" or (b) the other party had reason to know of the mistake.
While the distinction between a mistake of fact and a mistake of law is often blurred, it is generally recognized that there can be no relief for a mistake of "law." Rhodes v. Rhodes' Estate, 246 *625 S.W.2d 98, 102 (Mo.App.1952); Calamari, supra, § 9-28; Pomeroy, supra, § 842; cf., Hackman v. Director of Revenue, 771 S.W.2d 77 (Mo. banc 1989).
Tested by these principles, the trial court erred in avoiding the joint account by giving relief because of a unilateral mistake of fact and a mistake of law. There was no mutual mistake, and, while there may have been a unilateral mistake of fact and a mistake of law, it was not one for which recission may be afforded, because of the "intent" of Bernard Hysinger.
The mistake referred to in LaGarce cannot be interpreted to give relief to the estate of a depositor of funds who deposits money into a statutory joint tenancy and who misunderstood the legal effect of the joint account or unilaterally misunderstood that the account was joint, or misunderstood the meaning of the words and markings on the signature card, because such a mistake would allow the depositor's intent to contravene the statute and the law as established by LaGarce. LaGarce drastically changed previous Missouri decisional law. Previous decisions recognized that the creation of a joint account established only a rebuttable presumption of a joint tenancy with right of survivorship which could be counteracted by showing a different "intent." Under the decisions prior to LaGarce, the intent of the depositor whether to establish a joint account for the convenience of the depositor, or for some other reasoncould be shown to counteract the mere rebuttable presumption. But, under LaGarce, all this changed. LaGarce concluded that the deposit of funds into a joint account as joint tenants with right of survivorship, if, in compliance with the statute, created a conclusive presumption and evidence of the intent of the depositor was irrelevant, absent fraud, undue influence, mental incapacity or mistake. Estate of Huskey v. Monroe, supra, 674 S.W.2d at 212; Estate of Plummer v. Fritsch, supra, 706 S.W.2d at 575 (provisions of agreement cannot be varied by evidence indicating a contrary intent); Blue Valley Federal Sav. and Loan v. Burrus, 637 S.W.2d 737, 742 (Mo.App.1982); LaGarce, supra, 487 S.W.2d at 501; Peters v. Carr, supra, 654 S.W.2d at 321-322 (evidence of intent was irrelevant and could not be used to divest one of the survivors of ownership). To give relief upon a showing of the depositor's intent is contrary to the establishment and creation of a statutory joint tenancy authorized by statute would undo the whole fabric of LaGarce. Courts have therefore held that evidence of a contrary intent cannot vary the written agreement. Estate of Plummer v. Fritsch, supra, 706 S.W.2d at 575; see also, Connor v. Temm, 270 S.W.2d 541 (Mo.App.1954) and Commerce Trust Co. v. Watts, 360 Mo. 971, 231 S.W.2d 817 (Mo.1950).
While Bernard Hysinger may have mistakenly believed that the opening of the joint accounts had no legal significance, or may have misunderstood the meaning of the words and markings on the joint accounts, these types of "mistakes" are insufficient to grant recission of the joint accounts, and do not afford relief for a "mistake" as referred to in LaGarce. These types of mistakes are ones for which no relief may be afforded. The "mistake" referred to in LaGarce must be construed in its traditional meaningone that is mutual or one that fulfills the elements of a unilateral mistake, and not one of law.
It has often been stated that there can be no relief against mistake when the party had within his reach the means of ascertaining the true state of facts, and, without being induced thereto by the other party, neglected to avail himself of his opportunities of information. Barrett, Fitch, North & Co. v. Hudson, 403 S.W.2d 944, 947 (Mo.App.1966).
The two authorities relied upon by the trial courtSmith v. Githens and Employers' Indemnity Corporation v. Garrett, supra, do not support the order of the trial court. Smith v. Githens involved a reformation of a deed to incorporate an assumption of a mortgage clause.
Although an elderly gentleman who suffered from some infirmities and who needed assistance in getting about, Mr. Hysinger was intelligent, knowledgeable and in charge of his faculties. He was mentally competent; the evidence indicates he knew *626 what he was doing. The evidence indicates that he wanted to reward Heeney in some fashion for his aid. Although Mr. Hysinger may have misunderstood the legal effect of a statutory joint tenancy and the significance of the words and markings on the signature card, as shown by his statements, notes and correspondence, these misunderstandings do not rise to the level of such a mistake within the meaning of LaGarce so as to afford the relief of recission.
We hold, therefore, that an intent contrary to the establishment of a joint tenancy account with right of survivorship in accordance with § 362.470, R.S.Mo.1986, and a mistake as to the legal effect of the establishment of such a statutory joint tenancy or a mistake regarding the words and markings on a signature card affords no relief by way of recission of the joint accounts.
This proceeding is akin to In Re Estate of Kroeger, 490 S.W.2d 407 (Mo.App.1973). There, a similar situation occurred. The deceased, a widow, suffered from the usual infirmities of old age, but was mentally alert. She opened a joint account with another woman. The estate sought to show that she made a "mistake." This court held that the evidence did not support such a contention, and ruled that the widow was mentally alert, that the terms of the joint tenancy agreement were clearly set forth, and that there was no mistake. We find the same situation in this proceeding.
In view of the above, the order of the circuit court misapplies the law, so that under the principles of Murphy v. Carron, supra, the order should be reversed. The order of the probate division is reversed with directions to set aside the order and enter a new order declaring that the survivor of the joint accounts in Boatmens' Bank belong to the survivor of the joint accounts, Francis J. Heeney.
Judgment reversed with directions.
SIMON, C.J., and DOWD, J., concur.
NOTES
[1] A joint account in the name of Hysinger and Chaney was opened at the Royal Bank Mid-County, on August 16, 1985. But Chaney predeceased Hysinger. Decedent wrote a note to Vaughn that Chaney's name was put on the account to bury him, and after expenses Vaughn would receive the remainder of the money.
[2] The court relied upon Employers' Indemnity Corporation v. Garrett, 327 Mo. 874, 38 S.W.2d 1049 (1931) and Smith v. Githens, 271 S.W.2d 374 (Mo.App.1954).
[3] Sections 362.470 (banks), 369.150 (savings and loans) now§ 369.174 and 363.740 (trust companies).
[4] The statute does not refer to the term "mistake." It may well be that the statute has abrogated the factor of mistake recognized in LaGarce since it is absent in the statute. The General Assembly is presumed to know the holding of LaGarce. We do not decide that issue. The parties have not raised it. We resolve the issues raised by the parties.