Jennifer Mae JONES, Personal Representative of the Estate of Dorothy Louise Jones and Individually, Respondent,

v.

TEACHERS INSURANCE AND ANNUITY ASSOCIATION, Appellant.

No. WD 51948.

Missouri Court of Appeals, Western District.

Sept. 17, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 29, 1996.

Application to Transfer Denied Dec. 12, 1996.

Bernard Daniel Simon, II, Columbia, for Respondent.

Thomas Blumeyer Weaver, St. Louis, for Appellant.

Before ULRICH, P.J., C.J., SPINDEN and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

This is an appeal from an order by the Honorable Ellen S. Roper, Circuit Judge, Boone County, rescinding an annuity contract between Dorothy Louise Jones, respondent's mother, and appellant, Teachers In-

surance and Annuity Association. Appellant contends the trial court erred in ordering rescission based on unilateral mistake of the single life annuity contract between Mrs. Jones and appellant. We agree and reverse.

## Facts

Dorothy Louise Jones, "Mrs. Jones," was a physical education and tennis instructor and director of the physical education department at Stephens College ("Stephens") in Columbia for 35 years. Respondent, Jennifer Mae Jones, is Mrs. Jones' daughter and sole heir.

In 1964, while employed at Stephens, Mrs. Jones entered into a deferred annuity contract with appellant. Appellant is a not-for-profit entity that provides retirement benefits primarily to college and university employees. Stephens paid into the plan, and the appellant invested the funds for Mrs. Jones. Mrs. Jones' plan ("the original annuity") provided that when she became eligible for retirement, she could surrender the original annuity to appellant in exchange for a new annuity providing monthly retirement benefits. It also provided that if Mrs. Jones died before this exchange, appellant would pay the cash value of the original annuity to her designated beneficiary, which was respondent.

In 1985 or 1986, at the age of 63, Mrs. Jones began to look into early retirement options. In March 1986, she requested from appellant information regarding her payment choices under her annuity. The appellant offered several options, including monthly payments during her life with all payments ceasing at her death ("single life annuity"), and several options providing lesser monthly payments but with various guarantees of a sum remaining to pass on to the beneficiary. Mrs. Jones also had the choice of retaining the original annuity, receiving no monthly benefits but with the full sum payable to respondent upon Mrs. Jones' death.

Mrs. Jones, who was regarded as a meticulous planner and very careful and conservative with her finances, talked to respondent and several friends about this choice. At that point, in April 1986, Mrs. Jones was in good health and looked forward to an active retirement of golf, tennis and traveling. Respondent meanwhile had a masters degree in hospital administration and a successful career as a vice president of a company in the health care field.

In light of her good health and in order to maximize her disposable income during retirement, on April 15, 1986, Mrs. Jones selected the single life annuity, executing an "Application for Retirement Annuity Benefits," thus surrendering the original annuity contract. Nonetheless, the payments were not to begin for several months, in September 1986. Mrs. Jones retained the power to change her selection of annuity income options before the first payment by simply calling an 800 telephone number; both the contract and accompanying literature clearly stated that once the first payment was made, Mrs. Jones would be bound by her choice.

Mrs. Jones was diagnosed with valvular heart disease June 9, 1986, and underwent surgery July 6. Unfortunately, Mrs. Jones never made the recovery from the surgery as was expected; in fact, her condition, diagnosed as congestive heart failure, constantly deteriorated until her death.

On September 5, 1986, while Mrs. Jones was in the hospital, the first payment of $1,199.69 was issued by appellant, as agreed, to Mrs. Jones' designated bank, and the new annuity contract was sent to her home. Three weeks later, on September 26, Mrs. Jones died. At this point, the accumulated cash value of the original annuity was $109,342.61. Mrs. Jones' estate under her will, all of which passed to respondent, was $208,000.

Respondent filed this cause of action against appellant claiming that had Mrs. Jones been fully aware of her right to change her choice of payment option, she would not have elected to continue with the single life annuity in late August and early September due to her severe illness. Thus, respondent prayed for rescission of the contract based on a unilateral mistake of fact on the part of respondent and Mrs. Jones in allowing the contract to become final by accepting the first payment without knowing it could still be cancelled.

The trial court held that Mrs. Jones either forgot about or was unaware of her right to

change or defer the selection of the new annuity and that she would have postponed the first payment had she known or remembered, and ordered rescission in order to avoid an "unjust and oppressive" result. The court restored the original annuity and ordered appellant to pay respondent the cash value of the original annuity, less the September 5, 1986, payment of $1,199.69, plus interest of 9% from the date of death until the date of payment.

## I.

In its first point, appellant contends the trial court erred in ordering rescission of the annuity contract between Mrs. Jones and appellant on the basis of unilateral mistake in that the evidence is insufficient to establish the existence of a unilateral mistake. We agree.

In an appeal of a suit in equity, the decree or judgment of the circuit court will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, erroneously declares the law, or erroneously applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. 1976); *Hankins v. Hankins,* 920 S.W.2d 182, 185–186 (Mo.App.1996). In conducting our review, we accept all evidence and inferences favorable to the judgment and disregard all contrary inferences. *Pinnell v. Jacobs,* 873 S.W.2d 925 (Mo.App.1994).

Respondent argues that because of appellant's failure to fully advise Mrs. Jones of her right under their agreement to change her choice of payment option of retirement annuity benefits, or because of her serious illness and accompanying profound mental depression, appellant made a mistake in failing to exercise her right to change her choice. It is this "mistake" that respondent contends constitutes a "unilateral mistake" warranting rescission of the single life annuity which Mrs. Jones chose in exchange for the original retirement annuity. Respondent concedes there is no direct evidence of mistake but urges that there is substantial evidence from which the trial court could infer mistake. Respondent's contention in this regard can best be captured by quoting from Respondent's brief:

Respondent submits that the uncontested evidence of Dorothy's love for her daughter, her state of mind, and her thoughts, intentions and desires; character, propensities and proclivities of Dorothy Jones as to financial planning and financial matters and her care for, concern for and pride in her daughter; and the uncontested evidence of the observations of her family and friends as to the fact that Dorothy was a meticulous financial planner and that she loved, adored, doted upon, cared about and was very close to her daughter; and the uncontested evidence that she invested with extreme conservatism [see Testimony of her CPA, Charles Murphy (Tr. 167) and the Testimony of stock broker, Thomas Baumgardner (Tr. 169–171)], and that she never gambled or took risks (Tr. 85), all of which was received in this case, reflects upon the central issue in this cause, the thoughts of Dorothy Louise Jones about the annuity selection in August–September, 1986, or, more likely, the absence of any thoughts about such matter, which such absence of thought was caused by lack of information, severe physical illness, and profound mental depression. Such evidence permitted the trier of fact, the trial judge, to draw, by way of reasonable inference, the conclusion that Dorothy Jones made a mistake about changing her annuity options in August, September, 1986 because of lack of information about her rights and options as to the annuity, or because of her forgetfulness or inability to confront or deal with or discuss financial matters which was caused by her illness and profound depression. Moreover, such evidence permitted the trial judge to draw the reasonable conclusion that Dorothy, therefore, made a "mistake," a "mistake of fact". Such mistake was sufficient to support the Trial Court's rescission of the cancellation of the Original Annuity for the New Annuity.

Resp. Br. 42–3. The trial court found in pertinent part that

7. Either Dorothy had simply forgotten about her right to cancel, defer or change the selection of the Single Life Annuity because of her physical, mental or emo-

tional condition or because she was not informed of such right by TIAA, or her physical, mental and emotional condition was such as to cause her to act in a manner differently than any reasonable person would have acted, and in the manner in which Dorothy would normally have acted under the circumstances. (Trial Court Finding 48, L.F. 296–297);

8. All of these results and circumstances arose from a lack of knowledge and a mistake of, or a lack of recollection or recall of Dorothy Jones as to essential facts (Trial Court Finding 49, L.F. 297); that a mistake was, therefore, made (Trial Court Conclusion 2, L.F. 298); and that the harsh results of this mistake could be reversed without substantial burden or expense of prejudice to TIAA (Trial Court Conclusion 5, L.F. 299).

Resp. Br. 42.

Respondent's argument is grounded on a basic assumption that in light of Mrs. Jones' life circumstances, it is reasonable to infer that she would not have failed to change her annuity choice unless she was operating under a mistaken belief that she could not. In this regard, Respondent argues that the critical point of reference as to when Mrs. Jones was mistaken is September 8, 1986, which she contends is when the "new" annuity or contract was entered into. Her contention is that the exchange of the old annuity for the new annuity occurred on September 8 and constituted a new transaction or contract. This issue is a red herring in that regardless of what reference point is used, respondent's evidence is wholly insufficient to support a finding of unilateral mistake necessary for rescission.

Respondent argues that "[e]quity is reluctant to permit a wrong to be suffered without remedy." *Weaver v. Jordan*, 362 S.W.2d 66, 75 (Mo.App.1962). While this is true, "... equity vests in the judiciary no broad and unfettered discretion to disturb or alter contractual rights ...; the aid of a court of equity may not be invoked to avoid or prevent enforcement of a contract, simply because such enforcement may work a hardship upon one of the parties." *Tamko Asphalt Products, Inc. v. Fenix*, 321 S.W.2d

527, 537–538 (Mo.App.1958). "Even a court of equity may not depart from precedent and assume an unregulated power of administering abstract justice." *Linville v. Ripley*, 237 Mo.App. 1275, 173 S.W.2d 687, 690 (1943). Rescission of an executory contract on the basis of a unilateral mistake is appropriate only when the mistake relates to the facts as they existed at the time of the making of the contract. *In re Estate of Hysinger*, 785 S.W.2d 619, 624 (Mo.App.1990). "In this situation courts show a lack of sympathy for a claim that one party did not understand the consequences of an act. . . ." *Id.* "A mistake to justify a rescission of a contract must relate to the existence or non-existence of a fact, past or present, material to the contract, and not as to a future contingency. The mistake must be as to a matter of fact, not as to a matter resting in mere conjecture or belief." *Jennings v. Metro. Life Ins. Co.*, 166 S.W.2d 339, 344 (Mo.1942). Further, a mistake warranting rescission must be proven by clear, cogent and convincing evidence. *Hysinger*, 785 S.W.2d at 624; *Employers Indem. Corp. v. Garrett*, 327 Mo. 874, 38 S.W.2d 1049, 1054 (1931).

On April 15, 1986, Mrs. Jones signed an "Application for Retirement Annuity Benefits," which immediately above her signature and in bold type provided "I understand that I cannot change my choice of option . . . once payments begin . . ." A competent person is presumed to know the contents of the contract he or she signs. *Mason v. Mason*, 873 S.W.2d 631, 635 (Mo.App.1994). Respondent concedes that Mrs. Jones was competent at the time she signed the application in April. Respondent makes no claim that the language of this provision is ambiguous. Even if she did, the language is obviously clear and unambiguous and could not be subject to more than one reasonable interpretation. *Harris v. Union Electric Co.*, 622 S.W.2d 239 (Mo.App.1981). Thus, Mrs. Jones is charged with the knowledge of the annuity provision which allowed her to change her selection of annuity options prior to first payment. Consequently, respondent cannot now argue that Mrs. Jones was mistaken as a result of not being fully advised of her rights to change her annuity option. Mrs. Jones' failure to

understand or recollect her right of selection is separate and apart from any claim that she was not advised.

There can be no mistake as to the fact Mrs. Jones' annuity agreement with appellant included a clear and unambiguous right to change her annuity selection of which she is charged with knowledge. The fact she failed to exercise this right of selection in a timely fashion due to a forgetfulness, confusion or inadvertence was certainly improvident. However, it is logically not a unilateral mistake warranting rescission. In the context of a claim for rescission, mistake "does not mean an improvident act that is the result of an erroneous belief" as to the facts. *Hysinger*, 785 S.W.2d at 624. If we were to accept the argument of respondent as to what constitutes a unilateral mistake sufficient to support rescission, we would be setting a standard by which parties could avoid their contractual obligations simply because they forgot or were confused as to what their future contractual rights or obligations were due to a subsequent illness, etc. We decline to revolutionize contract law by extending the concept of "unilateral mistake" to this outer limit.

■ Even assuming, *arguendo*, that we would be inclined to follow respondent's conceptualization of unilateral mistake, respondent's evidence is insufficient to establish the same. Respondent argues that the evidence presented supports an inference that the reason Mrs. Jones did not change her annuity selection was because she was mistaken as to her right to do so. It is this inference that respondent relies upon to support rescission for unilateral mistake in this case. We disagree.

"An inference is a logical a priori conclusion drawn by reason from proven or admitted facts. It is more than, and cannot be predicated on, mere surmise or conjecture. It is not a possibility that a thing could have happened or an idea founded on the probability that a thing may have occurred. *Smith v. Seven–Eleven, Inc.*, 430 S.W.2d 764, 769 (Mo. App.1968)." *Allison v. Sverdrup & Parcel & Assoc.*, 738 S.W.2d 440, 456 (Mo.App.1987). " 'If two or more inferences may be deducted of equal reasonableness, then there is no inference that may be indulged without mere

speculation.' " *Pipes v. Missouri Pacific R.R. Co.*, 338 S.W.2d 30, 36 (Mo.1960), *Citing Pape v. Aetna Casualty & Surety Co.*, 150 S.W.2d 569, 573 (Mo.App.1941). "[P]roof of essential facts may be accomplished by circumstantial evidence so long as the desired inference established 'with such certainty as to cause it to be the more probable of the conclusions to be drawn.' " *Landis v. Sumner Mfg. Co., Inc.*, 750 S.W.2d 466, 469 (Mo. App.1988), *Citing, Vaughan v. Taft Broadcasting Co.*, 708 S.W.2d 656, 661 (Mo. banc 1986), "Liability cannot rest upon guess work, conjecture or speculation beyond inferences reasonably to be drawn from the evidence. *Graham v. Conner*, 412 S.W.2d 193, 203 (Mo.App.1967)." *Shackelford v. West Cent. Elec. Co-op., Inc.*, 674 S.W.2d 58, 63 (Mo.App.1984). The evidence relied upon by respondent, viewed in its most favorable light to respondent, would support equal inferences that respondent mistakenly believed she could not change her annuity option or that she knew she could change her option, but because of all that was occurring in her life, she simply forgot to change her annuity option. Thus, the trial court in ordering rescission here was relying upon an inference that lacked sufficient certainty to remove it from the realm of speculation. Even if this inference was more than speculation, it still would not constitute clear, cogent and convincing evidence of mistake warranting rescission. *Hysinger*, 785 S.W.2d at 624; *Employers Indem. Corp.* 38 S.W.2d at 1054. " 'For evidence to be clear, cogent, and convincing, it must instantly tilt the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind left with an abiding conviction that the evidence is true.' " *Dawes v. Dawes*, 891 S.W.2d 510, 522 (Mo.App.1994), *citing In re Sedillo*, 84 N.M. 10, 498 P.2d 1353, 1355 (1972). The inference here falls far short of that standard.

It is unfortunate when a single monthly payment is all an annuitant has to show for an annuity, although the annuitant in this case is deceased and would not benefit from any relief granted by the trial court. Courts have long held that rescission of an annuity contract is improper simply because an annuitant dies earlier than expected. *See, Woodworth v. Prudential Ins. Co.*, 258 A.D.

103, 15 N.Y.S.2d 541 (1939); *Stockett v. Penn. Mut. Life Ins. Co.*, 82 R.I. 172, 106 A.2d 741, 742 (1954); *Meyer's Executor v. Huber*, 280 S.W.2d 157, 158 (Ky.1955). Under their agreement, Mrs. Jones bore the risk that she would die earlier than expected and appellant bore the risk that Mrs. Jones would live many years beyond what was predicted by the actuarial tables. Even in equity, courts cannot interfere with the allocation of risks, rights and obligations of parties pursuant to a valid contract simply because we do not like the result.

We conclude, after considering the evidence in a light most favorable to respondent, that the trial court erred in rescinding the annuity contract on the basis of unilateral mistake. Inasmuch as our ruling on this point is dispositive of the appeal, we need not address appellant's other points. The trial court's judgment rescinding the single life annuity contract is reversed.

All concur.