**Shirley J. RICKS, Respondent,**

v.

**MISSOURI LOCAL GOVERNMENT EMPLOYEES' RETIREMENT SYSTEM, Appellant.**

No. WD 55175.

Missouri Court of Appeals, Western District.

Sept. 29, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 24, 1998.

Application for Transfer Denied Jan. 19, 1999.

Thomas M. Schneider, Jones, Schneider and Bartlett, Columbia, for appellant.

Robert L. Hawkins, III, Susan Decker McNarie, Hawkins Law Office, Jefferson City, for respondent.

Before ULRICH, P.J., and HANNA and EDWIN H. SMITH, JJ.

ULRICH, Presiding Judge.

Plaintiff, Shirley Ricks, widow of William Ricks, appeals the decision of the Defendant, Missouri Local Government Employees' Retirement System (LAGERS), denying her survivor's pension benefits. At the time of Mr. Ricks' retirement, Mr. and Mrs. Ricks elected to receive his retirement benefits in the form of a monthly retirement allowance payable to Mr. Ricks for his life. Mrs. Ricks, therefore, was precluded from receiving sur-

vivor's benefits at his death. After a hearing before the LAGERS Board of Trustees, LAGERS found no grounds upon which relief could be granted to Mrs. Ricks because it concluded that sufficient information regarding the election of retirement benefits was provided to the Ricks prior to Mr. Ricks' election of a retirement option. The trial court, on appeal from the LAGERS' decision, reversed the Board's decision and entered judgment for Mrs. Ricks. On appeal to this court, Mrs. Ricks argues that the Board's denial of her claim was erroneous in that: 1) LAGERS breached its fiduciary duty to the Ricks by failing to provide sufficient information regarding the retirement options from which Mr. Ricks could determine that Mrs. Ricks was eligible to receive survivor's benefits, 2) a unilateral mistake on the part of the Ricks existed when they elected a retirement option that warrants recission, and 3) LAGERS negligently made misrepresentations to the Ricks regarding Mr. Ricks' retirement options. The judgment of the trial court is reversed, and the decision of LAGERS is affirmed.

## I. Facts

Missouri Local Government Employees' Retirement System (LAGERS) is a nonprofit entity that provides retirement, survivor and disability benefits to employees of local governments. Both Shirley Ricks and her husband, William Ricks, were employees of the City of Columbia. Shirley and William Ricks were married on two separate occasions. The first marriage occurred in 1957 and was dissolved in 1982. The Ricks then remarried in 1993.

At the time of their second marriage, William Ricks was suffering from vascular disease that affected his heart and caused circulation problems. Due to his illness, William Ricks decided to retire in late 1993. In a letter to LAGERS dated October 22, 1993, Mr. Ricks requested information about his retirement benefits. On December 10, 1993, he completed a change of nomination of beneficiary form designating Shirley Ricks his primary beneficiary. Mr. Ricks then applied for retirement on December 29, 1993.

In January 1994, Mr. and Mrs. Ricks executed a retirement election form. The election form set forth four options available to retirees for a retirement payment plan and provided a description of each of the four options. Mr. Ricks, with the agreement of Mrs. Ricks, was to choose one of the four options. The options were described on the form as follows:

LIFE OPTION

A monthly allowance payable to me for my life.

OPTION A

A monthly allowance payable to me for my life—with the added provision that should I die before my primary beneficiary dies, upon my death my primary beneficiary will begin receiving a monthly allowance payable for the reminder of her (his) lifetime of any amount equal to 75% of the monthly allowance I receive. Should my primary beneficiary predecease me, upon notification to the system, my monthly allowance will revert to the Life Option allowance payable for the remainder of my lifetime.

OPTION B

A monthly allowance payable to me for my life—with the added provision that should I die before my primary beneficiary dies, upon my death my primary beneficiary will begin receiving a monthly allowance payable for the reminder of her (his) lifetime of any amount equal to 50% of the monthly allowance I receive. Should my primary beneficiary predecease me, upon notification to the system, my monthly allowance will revert to the Life Option allowance payable for the remainder of my lifetime.

OPTION C

A monthly allowance payable to me for my life—with the added provision that should I die before 120 monthly payments have been made, my beneficiary will begin receiving the same monthly payments for the remainder of the 120–month period—with the further added provision that should my beneficiary and I both die before a total of 120 monthly payments have been made, the equivalent value of the

remainder of 120 monthly payments will be paid to my estate.

Options specifically available to Mr. Ricks listed at the bottom of the election form indicated he was eligible for the Life Option and Option C only.[1] The form required the signature of both the retiree member and his spouse. The form also contained a statement placed above the signature lines that read "I realize that this option cannot be changed after retirement." Both Mr. and Mrs. Ricks signed the election of allowance option form (Mrs. Ricks' signature appeared under the heading "spousal consent to member's election") indicating that Mr. Ricks elected the Life Option.

Prior to executing the election form, Mrs. Ricks called the LAGERS toll-free number and talked to two LAGERS staff members about the retirement options. These discussions focused on the statutory requirement that under Options A or B a beneficiary-spouse must be married for at least two-years immediately preceding the time the member-recipient retires to be eligible to receive benefits for the rest of the beneficiary's life—this two-year requirement is sometimes referred to as the death bed rule. *See* § 70.660 RSMo 1994. Mrs. Ricks contends that LAGERS' staff told her that she was not eligible for survivor's benefits under Option A or B as a spouse because she and Mr. Ricks had not been married for the two-years immediately preceding his retirement, and, therefore, that she could not be a named beneficiary.

Because Mrs. Ricks did not ask the staff members about Option C, which is not subject to the death bed rule, C was not discussed, and the LAGERS staff members did not indicate that another option existed under which she could receive benefits. Mrs. Ricks contends that because the staff members did not tell her that the death bed rule did not apply to Option C, she reasonably assumed the rule applied to all available options. Therefore, assuming that she could not be a beneficiary under Options A, B or C, Mrs. Ricks "didn't give any thought" to Option C. Only one of the two staff members, Sue Bielecki, remembered discussing the op-

tions with Mrs. Ricks. Ms. Bielecki stated that although she did not remember the details of the conversations with Mrs. Ricks, she would not have told Mrs. Ricks that she was not eligible to be a beneficiary under any of the four options.

Prior to his execution of the option election form, LAGERS provided Mr. Ricks a packet given to all retirees that included a booklet and a memorandum explaining the retirement benefit options. The booklet states the following regarding Option C:

OPTION C

This option, if selected, provides for a reduced monthly allowance for your lifetime, regardless of how long you live; with the added provision that should you die before being paid a total of 120 monthly payments, the same reduced monthly payment will be continued to your beneficiary, until the system has made a total of 120 monthly payments under your account.

The allowance payable under Option C is 90% of the life allowance . . .

Unlike Options A and B, under Option C you can change your designation of a beneficiary at any time, including after retirement.

Should you elect Option C and should you and your beneficiary die within the guaranteed period, your estate will receive a lump sum settlement of the current value of the remaining monthly payments due. . . .

Additionally, under the description of Options A and B, the memo explains the two-year spousal requirement as follows:

Under *Option A or Option B* you cannot change your designation of primary beneficiary either. You must designate your primary beneficiary—one person only—before the effective date of your retirement. If your primary beneficiary dies before you do after retirement, you cannot substitute another primary beneficiary. Your primary beneficiary must be either *(1) your spouse who has been your spouse for at least the 2 years immediately preceding your retirement date,* or (2) another per-

1. See attached exhibit.

son age 40 or older at your retirement date who has been receiving at least ½ support from you for at least the 2 years immediately preceding your retirement date (emphasis added).

The description of Option C in the memo contains no reference to the two-year spousal requirement.

Mrs. Ricks acknowledged that both she and Mr. Ricks reviewed the materials sent by LAGERS. However, she contends that they understood the death bed rule applied to all four options. In March of 1995, after electing the Life Option, Mr. Ricks sent a letter to LAGERS again indicating that he wanted to designate Mrs. Ricks as his beneficiary and asking for an exemption from the death bed rule on the basis that they had been married for 25 years in their first marriage. LAGERS informed Mr. Ricks that because he had received the first payment of his retirement allowance, his right to elect an option ended and no change could be made to his choice of retirement plans.

Mr. Ricks died in October of 1995. Shortly thereafter Mrs. Ricks discovered that she was an eligible beneficiary under Option C. Mrs. Ricks asserts that neither she nor Mr. Ricks was aware she could receive survivor's benefits by selecting Option C and that if she had known, she would not have signed the consent form selecting the Life Option. Her claim was filed with LAGERS in May of 1996 seeking relief on three grounds: (1) breach of fiduciary duty, (2) unilateral mistake and (3) negligent misrepresentation.

A hearing was held before the LAGERS Board on September 24, 1996. After the hearing, the Board found that no competent and substantial evidence existed to support Mrs. Ricks' claims. Mrs. Ricks then appealed the Board's decision to the Boone County Circuit Court pursuant to § 536.140 RSMo 1994. The trial court reversed LAGERS' decision and entered judgment for Mrs. Ricks. This appeal followed.

## II. Standard of Review

In an administrative appeal, the appellate court reviews the decision of the administrative agency, not the judgment of the circuit court. *Kendrick v. Board of Police*

*Comm'rs,* 945 S.W.2d 649, 651 (Mo.App. 1997); *Fritzshall v. Board of Police Comm'rs,* 886 S.W.2d 20, 23 (Mo.App.1994). This court's review is limited to determination of whether the agency's findings were supported by competent and substantial evidence on the whole record. *Kendrick,* 945 S.W.2d at 651 (citing *Clark v. School Dist. of Kansas City,* 915 S.W.2d 766, 773 (Mo.App. 1996)); *Fritzshall,* 886 S.W.2d at 23. "Substantial evidence" is evidence that has "probative force and from which the trier of fact could reasonably find issues in harmony therewith." *Halford v. Missouri State Highway Patrol,* 909 S.W.2d 362, 364 (Mo.App. 1995). "If the findings of the administrative agency are supported by substantial and competent evidence in the record, they must be affirmed...." *Id.*

In determining whether the evidence is competent and substantial, the appellate court views the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the agency's decision. *Kendrick,* 945 S.W.2d at 651. Although not bound by the agency's decisions on questions of law, the appellate court must defer to the agency's findings on the weight of the evidence and the credibility of witnesses. *Fritzshall,* 886 S.W.2d at 23. Because the fact finding function rests with the administrative agency, if the evidence would warrant either of two opposed findings, the appellate court must uphold the factual determinations the agency has made. *Id.*

## III. LAGERS' Fiduciary Duty

As her first point on appeal, Mrs. Ricks contends that the Board erred in denying her survivor's pension benefits because the Board's finding that the Ricks were provided sufficient information regarding eligibility under Option C was not supported by competent and substantial evidence upon the whole record in that LAGERS breached its fiduciary duty to both her and her husband by failing to provide sufficient information regarding the death bed rule and Option C. To determine whether such a duty was breached, whether LAGERS owed a fiducia-

ry duty to the Ricks must first be determined.

 The LAGERS enabling statute creates a corporate entity within the state that effects the general administration and operation of the local government retirement system. § 70.605.1 RSMo 1994. By statute, these responsibilities are vested in a board of trustees. § 70.605.2 RSMo 1994. Because retirees of local government have an interest in the retirement fund, the LAGERS board of trustees has a fiduciary duty to the retirees to administer the fund in a reasonable manner. Part of this fiduciary duty is the duty to provide retirees sufficient information to make an informed decision in electing a retirement option. Therefore, in this case LAGERS had a fiduciary duty at least to Mr. Ricks to provide him sufficient information regarding the retirement options.

A review of the record in this case reveals competent and substantial evidence from which the Board could find that Mr. and Mrs. Ricks were given sufficient information to make an informed decision in electing a retirement option. Mr. Schwartz, the Executive Secretary for LAGERS, testified that a packet of information containing both a booklet and a memorandum explaining the retirement options was sent to all retirees. Mrs. Ricks acknowledged in her testimony that Mr. Ricks received such materials and that both she and Mr. Ricks reviewed them including the description of Option C in the booklet. Although this information was given to the Ricks prior to their conversations with the LAGERS staff, Mrs. Ricks' own testimony was that she did not inquire about Option C at any time during her discussions with the staff. Instead, the conversations focused on the possibility of Mrs. Ricks becoming a beneficiary under Options A or B, which the LAGERS staff informed her was not possible due to the death bed rule.

In addition to the booklet and the memo sent to the Ricks, the election form given to the Ricks specifically lists the options available to Mr. Ricks under the heading "Optional Forms of Payment Available to William Curtis Ricks" as being the Life Option and Option C.[2] This form showed the computed monthly benefits for each of the two available options and again provided a description of all available options. In spite of this, the Ricks still did not inquire about Option C. Mr. Ricks then signed the election form, electing the Life Option, under a caption that read "I realize that this option cannot be changed after retirement," and Mrs. Ricks signed the spousal consent to member's election line.

 Although LAGERS has a fiduciary duty to provide sufficient information from which the retiree may make an informed decision, it is not required to give advice on which option to choose. Therefore, the information provided to the Ricks satisfied LAGERS' fiduciary duty. Because the Board's decision regarding the sufficiency of the information provided is supported by competent and substantial evidence, this point is denied.

### IV. Unilateral mistake

 In her second point, Mrs. Ricks contends that the Board erred in finding no unilateral mistake warranting rescission due to the lack of clear, cogent and convincing evidence of mistake because the Board's finding was not supported by competent and substantial evidence upon the whole record and was contrary to the overwhelming weight of the evidence. To warrant recission of an agreement because of mistake, the mistake must 1) relate to the existence or nonexistence of a fact, past or present, that is material to the agreement rather than a future contingency, and 2) be as to a matter of fact, not law, that constitutes the basis of the agreement. *Estate of Hysinger,* 785 S.W.2d 619, 624 (Mo.App.1990). To warrant recission, a mistake must be proven by clear, cogent and convincing evidence. *Jones v. Teachers Ins. and Annuity Ass'n,* 934 S.W.2d 307, 310 (Mo.App.1996) (citing *Hysinger,* 785 S.W.2d at 624). For evidence to be clear, cogent and convincing it must "instantly tilt the scales in the affirmative when weighed against the evidence in opposition" and leave the fact finder's mind with "an

---

**2.** See attached exhibit.

abiding conviction that the evidence is true." *Id.*

When only one party to the agreement has an erroneous belief as to the facts, a unilateral mistake occurs. *Hysinger,* 785 S.W.2d at 624. Generally, courts are reluctant to allow one party to avoid an agreement for a mistake that was not shared by the other. *Id.* Therefore, recission for a unilateral mistake is recognized only in limited instances. *Id.* The Restatement recognizes two circumstances where relief may be granted for unilateral mistake: 1) where enforcement would be unconscionable, or 2) where the other party had reason to know of the mistake. Restatement (Second) Contracts, Sec. 153; *Hysinger,* 785 S.W.2d at 624. Thus, the issue of whether recission is warranted due to a unilateral mistake involves a two part question: first, whether Mr. and Mrs. Ricks were operating under a mistake as to a past or present fact at the time Mr. Ricks elected the Life Option, and second, whether the mistake is such that either enforcement would be unconscionable or LAGERS had reason to know of the Ricks' mistake.

### A. Factual Determination of Mistake

The Board's determination, based on the evidence presented, regarding whether the Ricks were actually operating under a mistake is an issue of fact. Because the fact finding function rests with the Board, if the evidence would warrant either of two opposed findings, this court must uphold the factual determination of the Board. *Fritzshall v. Board of Police Comm'rs,* 886 S.W.2d 20, 23 (Mo.App.1994).

In this case, the Board found that Mrs. Ricks failed to present clear, cogent and convincing evidence of mistake. The evidence presented, viewed in the light most favorable to the Board's decision, showed that the Ricks were given, and that they reviewed, the LAGERS booklet and memorandum including the descriptions of Option C; that Mrs. Ricks had several telephone discussions with LAGERS' staff members re-

garding Options A and B (and not Option C) in which, according to staff testimony, Mrs. Ricks was not told she could not be a beneficiary under Option C; and that Mr. Ricks, after electing the Life Option, continued to pursue an exemption to the death bed rule that would allow him to designate Mrs. Ricks as his beneficiary under Options A or B.

Mrs. Ricks argues that Mr. Ricks' March 15, 1995, letter to LAGERS "unequivocally" supports the inference that Mr. Ricks chose the Life Option because he mistakenly believed that she could not be a beneficiary under any option. When viewed in the light most favorable to the Board's decision, however, the evidence equally establishes the inference that Mr. Ricks, instead of mistakenly believing he could not designate Mrs. Ricks as a beneficiary under any option, believed he was precluded only from choosing Options A or B, and when given the choice between the Life Option and Option C, he elected the option that offered the most substantial payments.[3] Under this view of the evidence, the letter would be viewed as an attempt by Mr. Ricks to continue his efforts to obtain an exception to the death bed rule so that he could designate Mrs. Ricks as a beneficiary under Options A or B, not as "unequivocal" evidence that he was mistaken as to the application of the death bed rule to Option C.

Where multiple reasonable inferences may be deduced from the evidence warranting either of two opposed findings, the reviewing court must uphold the factual determinations the agency has made. *Fritzshall,* 886 S.W.2d at 23 (citing *Overland Outdoor Advertising Co. Inc. v. Missouri State Highway Comm'n,* 616 S.W.2d 563, 566 (Mo. App.1981)). Because multiple inferences could reasonably be deduced from the evidence presented, the Board's determination that Mrs. Ricks failed to establish mistake by clear, cogent and convincing evidence is based on competent and substantial evidence and must be upheld.

---

**3.** The allowance payable under Option C was limited to 120 payments at a rate of 90% of the life allowance.

### B. Unilateral Mistake Warranting Recission

Even if mistake by Mr. Ricks could have been established, his unilateral mistake would not warrant recission of the agreement. Recission on the basis of unilateral mistake is warranted in only two circumstances: 1) where enforcement would be unconscionable, or 2) where the other party had reason to know of the mistake. Restatement (Second) Contracts, Sec. 153; *Hysinger,* 785 S.W.2d at 624. An agreement is unconscionable if it involves "an inequality so strong, gross, and manifest that it must be impossible to state it to one with common sense without producing an exclamation at the inequality of it." *Peirick v. Peirick,* 641 S.W.2d 195, 197 (Mo.App.1982) (citing *Carter v. Boone County Trust Co.,* 338 Mo. 629, 92 S.W.2d 647, 658 (1935)); *see also Schlottach v. Schlottach,* 873 S.W.2d 928, 932 (Mo.App. 1994). The concept of unconscionability is meant to protect against one-sidedness, oppression, or unfair surprise. *Ferry v. Ferry,* 586 S.W.2d 782, 786 (Mo.App.1979); *see also* E.A. Farnsworth, Contracts § 4.28 (2nd ed.1990). The determination of whether the agreement is unconscionable is considered in light of the circumstances existing when the agreement was made. *In re Estate of Weinsaft,* 647 S.W.2d 179, 182 (Mo.App.1983).

In this case, there was neither oppression nor unfair surprise by LAGERS in the formation of the agreement. LAGERS provided Ricks both written and oral information regarding all retirement options sufficient to allow the Ricks to make an informed decision. Both Mr. and Mrs. Ricks had the opportunity to review the written materials and ask questions about the options prior to Mr. Ricks' election of a retirement option. Option C was not discussed only because Mrs. Ricks never inquired about it; however, Option C was clearly described in the written materials provided. The agreement itself is not unconscionable in that four reasonable retirement options are set forth for the retiree to choose from, and a description of each option is provided on the election form. Because no elements of oppression or unfair surprise were involved, enforcement of the agreement is not unconscionable.

Recission is also not warranted on the basis that LAGERS either knew or had reason to know of the Ricks' alleged mistake. To rescind a conscionable agreement due to unilateral mistake, Mrs. Ricks must show either that LAGERS knew of the mistake or that the mistake was of such a nature that it should have been known to LAGERS. *See Sheinbein v. First Boston Corp.,* 670 S.W.2d 872, 876 (Mo.App.1984); *Hysinger,* 785 S.W.2d at 624.

The evidence in the record shows that Mr. and Mrs. Ricks spoke to the LAGERS staff several times about the two-year beneficiary restriction placed on Options A and B. According to Mrs. Ricks own testimony, Option C was never discussed, and LAGERS staff members testified that Mrs. Ricks was not told during their conversations that she could not be a beneficiary under any option. The packet of information sent to the Ricks outlined the options and applied the death bed rule only to Options A and B, not to Option C. Finally, and most importantly, the election form specifically stated that Mr. Ricks could elect Option C. Therefore, there is no evidence to show that LAGERS either knew or should have known that the Ricks were unaware Mrs. Ricks could be designated as Mr. Ricks' primary beneficiary under Option C.

Because the Board's finding of no mistake sufficient to warrant recission is based on competent and substantial evidence, this court must uphold the determination of the Board. Point denied.

### V. Negligent Misrepresentation

Mrs. Ricks' final point is that the Board erred in denying her survivor's benefits because the Board's finding that the Ricks were not misinformed or mislead was not supported by competent and substantial evidence upon the whole record and was contrary to the overwhelming weight of the evidence.

Mrs. Ricks contends that in her telephone discussions with the LAGERS staff she was mislead as to the applicability of the death bed rule. She asserts that the staff told her she could not receive retirement benefits under any option because she and Mr. Ricks

had not been married for two years. However, Ms. Bielecki testified that although she did not remember the details of the conversations, she would not have made such a blanket statement to Mrs. Ricks. This conflicting testimony raised an issue of fact. Although not bound by the agency's decisions on questions of law, the appellate court must defer to the agency's findings on the credibility of witnesses. *Fritzshall*, 886 S.W.2d at 23.

■ The Board found that neither Mr. nor Mrs. Ricks was misinformed, misled or incorrectly advised by the LAGERS employees regarding their rights pertaining to the retirement options. Because issues of credibility are left to the province of the agency on appeal, and there was competent and substantial evidence presented from which the Board could find no misrepresentations were made, this point is denied.

■ Although Mr. Ricks made what proved to be a poor choice of retirement options, this court will not interfere with either the allocation of risks or the rights and obligations validly agreed to by the parties on the basis of a regrettable result. Because competent and substantial evidence exists in the record to support the Board's findings, the Order of the trial court is reversed, and the decision of the Board is affirmed.

All concur.

MISSOURI LOCAL GOVERNMENT EMPLOYEES RETIREMENT SYSTEM

## ELECTION OF ALLOWANCE OPTION

To the BOARD OF TRUSTEES:

I hereby elect, effective the date the first payment of my allowance becomes due, to receive under the following option any allowance benefits payable to me upon my retirement: *(choose one only)*

**LIFE OPTION**

■ A monthly allowance payable to me for my life

**OPTION A**

☐ A monthly allowance payable to me for my life – with the added provision that should I die before my primary beneficiary dies, upon my death my primary beneficiary will begin receiving a monthly allowance payable for the remainder of her (his) lifetime of any amount equal to 75% of the monthly allowance I received. Should my primary beneficiary predecease me, upon notification to the system, my monthly allowance will revert to the Life Option allowance payable for the remainder of my lifetime

**OPTION B**

☐ A monthly allowance payable to me for my life – with the added provision that should I die before my primary beneficiary dies, upon my death my primary beneficiary will begin receiving a monthly allowance payable for the remainder of her (his) lifetime of an amount equal to 50% of the monthly allowance I received. Should my primary beneficiary predecease me, upon notification to the system, my monthly allowance will revert to the Life Option allowance payable for the remainder of my lifetime.

**OPTION C**

☐ A monthly allowance payable to me for my life – with the added provision that should I die before 120 monthly payments have been made, my beneficiary will begin receiving the same monthly payments for the remainder of the 120 month period – with the further added provision that should my beneficiary and I both die before a total of 120 monthly payments have been made, the equivalent value of the remainder of 120 monthly payments will be paid to my estate.

To receive any benefits payable upon my death, I hereby designate as my primary beneficiary, Shirley J Ricks whose relationship to me is wife, whose sex is F, whose address is 1743 Sonora Drive, Columbia, Missouri 65201, and birthdate is 7-2-38, and whose date of marriage to me is 11-27-93 (if Option A or B is elected, documentary evidence of dates must be attached).

If any benefits are payable to a beneficiary subsequent to my primary beneficiary's death, I hereby designate as my contingent beneficiary, Julie Ricks Doneen and William Curtis Ricks III (equally), whose relationship to me is daughter and son, and whose address is Lansing, Michigan, and Columbia, Missouri.

I REALIZE THAT THIS OPTION CANNOT BE CHANGED AFTER RETIREMENT.
Dated at Columbia, Missouri, this eleventh day of January, 1994.

| /S/ Harold E. Boldt (City Hall) | /S/ William C. Ricks |
|---|---|
| Signature of Witness | Signature of Member |

| /S/ 1743 Sonora Drive | /S/ Columbia · Missouri 65201 |
|---|---|
| Member's Address | City State Zip |

### SPOUSAL CONSENT TO MEMBER'S ELECTION
*(This section should be completed if the member is married)*

I, Shirley J Ricks, am the lawful spouse of William C. Ricks.
The provisions of the option elected have been explained to me and I hereby consent to that election.
Signed____ /S/ Shirley J. Ricks ____Date____ /S/ 1-12-94

Witness____ /S/ Tara C. Calum ____Date____ /S/ 1-12-94

### OPTIONAL FORMS OF PAYMENT AVAILABLE TO
### WILLIAM CURTIS RICKS

DATE PREPARED: 01/10/1994

EMPLOYER NAME: CITY OF COLUMBIA
LAGERS NUMBER: 1775-1-1848
BENEFIT TYPE: AGE AND SERVICE

BENEFIT PROGRAM: LT-8 DEPARTMENT GENERAL
BENEFIT EFFECTIVE DATE: 02/01/1994

COMPUTED MONTHLY BENEFITS: MONTHLY AMOUNTS

| OPTION | DESCRIPTION | TO MEMBER TO AGE 62 | AT AGE 62 | POTENTIAL TO BENEF |
|---|---|---|---|---|
| LIFE | SINGLE LIFE ALLOWANCE TERMINATING AT DEATH | $1,495.75 | $1,121.89 | |
| C | LIFE ALLOWANCE WITH 10 YEAR CERTAIN FEATURE | $1,383.56 | $1,009.70 | $1,009 70 |

