**Ronald BUTLER, Sr., et al.,**
**Plaintiffs–Appellants,**

v.

**Harold HURLBUT, et al., Defendants–Respondents.**

**No. 60007.**

Missouri Court of Appeals,
Eastern District,
Division Three.

March 10, 1992.

Caldwell, Hughes, McHugh & Singleton, Richard G. Hughes, Rochelle Kaskowitz, St. Louis, for plaintiffs-appellants.

Wuestling, James & DeVoto, William F. James, St. Louis, for defendants-respondents.

PUDLOWSKI, Presiding Judge.

Appellants Ronald Butler, Sr. and Arlene Butler, husband and wife, sued the respondent Three Sevens Corporation, Inc. (Three Sevens) on a wrongful death claim on behalf of their son, on a personal injury claim by Mr. Butler and a derivative claim for loss of consortium by Mrs. Butler. The trial court granted Three Sevens summary judgment on the wrongful death claim based on the statute of limitations. The personal injury and loss of consortium claims went to the jury, based on negligent hiring, and it returned verdicts in favor of the appellants on each claim and awarded Mr. and Mrs. Butler $50,000 and $5,000 in damages respectively. On a post trial motion the trial court entered judgment notwithstanding the verdict in favor of Three Sevens on both claims. On appeal the Butlers argue the trial court erred in granting the summary judgment and the JNOV. Affirmed in part, reversed and remanded in part.

This suit arose out of an incident which occurred on February 15, 1985, between Mr. Butler, his son, Butler, Jr., and Derrick Merritt, an employee of Three Sevens. Butler, Jr. got into a dispute with Merritt over the correct amount of change which was claimed to be owed to Butler, Jr. for the purchase of gas at an Amoco Station. Merritt was an employee of the station which was owned by Three Sevens. Butler, Jr., believing that he did not receive the correct change, went to his father's shoeshine parlor and told him of the incident. .

Butler, Sr. then went to the Amoco Station and entered into a heated exchange with Merritt. Butler, Sr. was told to return later in the day to see if there was any overage. When the Butlers returned later that day they were told there was no overage and hence there would not be any reimbursement. The Butlers returned to the shoeshine parlor and decided they could do nothing further about the matter.

Later that evening Derrick Merritt and his brother Darryl went to the shoeshine parlor. The shop was closed but Butler, Jr. let them in the parlor. Derrick laid $13.00 on the counter, turned to ask his brother for more money, and then each brother pulled out a gun and started shooting at the Butlers. Derrick shot and killed Butler, Jr. and shot Butler, Sr. injuring his upper right hand and shoulder. Derrick Merritt was convicted of first degree murder for the killing of Butler, Jr.

At the time of the incident Merritt had been employed for 3½ months by Three Sevens as a cashier at the Amoco Station. The position was considered an entry or ground level position and paid close to minimum wage. The position required contact with the public although most of this contact was handled through a cash drawer and/or an intercom system. It was not unusual for cashiers to receive complaints from customers about being shortchanged.

John Sheperd, a supervisor for Three Sevens, interviewed Merritt for the cashier position for which he was eventually hired. Sheperd testified that the only skills required of the job were that the prospective employee be able to count and converse intelligently. Sheperd stated that he did not inquire into a person's criminal record for such a position because he did not believe such information was relevant.

Sheperd interviewed Merritt for about 10 to 15 minutes and found him to be very personable, neat in appearance and intelligent. Sheperd called the restaurant where Merritt had previously worked and found that he was eligible for rehire. Based on this information Sheperd felt that Merritt was capable of performing the position.

A review of his criminal record did reveal that approximately eight months prior to the February 15 murder Merritt had been convicted of unlawful use of a weapon and given a two-year suspended sentence and three years probation. In July of 1982 Merritt pleaded guilty to illegal possession of a Schedule IV controlled substance-pentacycline, and received a sentence in the workhouse. In October of 1980 Merritt pleaded guilty to carrying a concealed weapon and received a six month sentence in the workhouse.

On their first point of appeal the appellants allege the trial court erred in granting judgment notwithstanding the verdict in favor of Three Sevens on the jury's verdict in favor of the appellants on their personal injury and loss of consortium claims. The appellants argue they had presented sufficient evidence to support a claim of negligent hiring against Three Sevens because Three Sevens hired Merritt to work at the gas station in a position involving transactions with the public, without inquiring into his prior criminal record. The appellants claim Merritt's criminal record was evidence of his dangerous proclivities and as a result of Three Sevens hiring a person with such dangerous proclivities for a cashier position Butler, Sr. was injured.

In reviewing the trial court's granting of judgment notwithstanding the jury's verdict, "the evidence is taken in the light most favorable to the party against whom the judgment was entered, giving [that party] the benefit of reasonable inferences that may be drawn therefrom. The opposing party's evidence is disregarded, except to the extent it supports the verdict." *Hinton v. State Farm Mutual Automobile Ins. Co.*, 741 S.W.2d 696, 700 (Mo.App. 1987).

■ An employer may be liable for negligent hiring where the employer knows or should have known of the employee's dangerous proclivities and the employer's negligence was the proximate cause of the plaintiff's injury. *Gaines v. Monsanto Co.*, 655 S.W.2d 568, 570 (Mo.App.1983). In arguing that Three Sevens should have

known of Merritt's "dangerous proclivities" the appellants contend an employer has a duty to look into a prospective employee's criminal record where the job entails constant interaction with the public. In support of this argument the appellants cite *Reed v. Hercules Construction Co.*, 693 S.W.2d 280 (Mo.App.1985).

In *Reed* this court found that an employer of a general laborer on a construction site had no duty to conduct a background check on an applicant. *Reed*, 693 S.W.2d at 282–83. Appellants, however, rely on the further observation that "under some circumstances, such as where the nature of the employment itself would facilitate the commission of wrongful acts against third parties, such a duty may exist." *Id.* at 282.

The respondent, in response, argues that the opinion in *Reed* concluded that "even if an investigation had revealed convictions for two non-violent crimes and a shooting incident which did not give rise to criminal charges, we are not satisfied that such knowledge would be sufficient to impose liability under the facts of this case." *Id.* at 283. A review of Merritt's aforementioned criminal record would convince us, as it did in *Reed*, that such failure to investigate his record would not cause the respondent to be liable.

■ Merritt had two non-violent convictions and a suspended sentence with probation on another charge. These charges, if known, would hardly be sufficient to convict the respondent of negligence.

In addition, respondent argues that an employer has no duty to conduct a background check on a prospective employee. In support of its position respondent cites to the case of *Hollingsworth v. Quick*, 770 S.W.2d 291 (Mo.App.1989). In *Hollingsworth*, the court stated that there is no support for the theory that an employer has a duty to consult police and court records before hiring a person whose duties involve contact with the public. *Id.* at 294. We note that *Hollingsworth* is distinguishable to the case at hand in that the employee in question accurately stated that he had no criminal convictions on his employment application when he was originally hired. The Western District Court held that no such duty existed. *Id.*

■ In the present case the prospective employee, Merritt, had a criminal record at the time he applied for the cashier position. The respondent, however, made no inquiry as to this record because it felt such information was irrelevant for this job. The position as cashier is an entry level grade paying a minimum wage. The cashier has contact with the public although most of this contact was oral communication through an intercom and/or cash drawer located in a bulletproof gazebo. The appellants contend that because of the interaction with the public and the possibility for disputes as a cashier the employer had a duty to search into Merritt's criminal background and would have been aware of his "dangerous proclivities." We disagree.

Requiring a duty upon an employer to search every job applicant's past criminal record, if one exists, who interacts with the public is not reasonable. Obviously there are some situations which would require certain employers to investigate an applicant's past to determine if the applicant has a criminal record and if such record would necessitate a rejection of the applicant.

We recognize the employer's hobson's choice. The policy of not hiring anyone with a criminal record may be in violation of statutory enactments such as Title VII of the Civil Rights Act. *See Green v. Missouri Pacific Railroad Co.*, 523 F.2d 1290 (8th Cir.1975). On the other hand, the employer, as the appellants insist, may be liable for negligently hiring a person without investigating an applicant's criminal record and rejecting such application if it reveals an applicant's dangerous proclivities. We take the empirical course and hold that each cause of action of this ilk shall be determined by the facts presented. Point denied.

On their second point of appeal the appellants claim the trial court erred in granting summary judgment as to the appellants' wrongful death claim against Three Sevens. The wrongful death claim was

brought on several different counts and the trial court granted summary judgment as to all of these counts based on the statute of limitations.

There is a three year statute of limitations on wrongful death claims, § 537.100 RSMo 1986, and in the present case the claim arose on February 15, 1985. Therefore, the statute would run on February 15, 1988. The appellants' original petition naming Amoco Oil Company and Harold Hurlbut as defendants was filed on October 1, 1987. On February 3, 1988, the appellants filed a motion to join Three Sevens as a party defendant and this motion was granted on March 16, 1989.[1] Three Sevens filed a motion for summary judgment arguing that the statute of limitations had run because the motion to add Three Sevens as a party defendant was not granted until after February 15, 1988. The motion for summary judgment was filed on the day of the trial and was argued that day and the next.

■■■ Summary judgment is a drastic remedy that borders on denial of due process because it effectively denies the opposing party a day in court. *Joachim Savings & Loan Ass'n. v. State Farm,* 764 S.W.2d 648, 650 (Mo.App.1988). Since it is such a drastic remedy Supreme Court Rule 74.04(c) requires that the motion "shall be served at least ten days before the time fixed for hearing." Here, no such notice was given. The respondent argues that because the appellants were present when the motion was argued and made no objections to the lack of notice they, therefore, have waived the notice requirement. We disagree.

In the *Joachim* case Joachim renewed a motion for summary judgment on the day of the trial without notice to appellant State Farm. State Farm did not object to the lack of notice and participated in arguments concerning the motion. The trial court granted Joachim's motion for summary judgment and State Farm appealed because of the lack of notice. In ruling for State Farm this court stated "the clear and

express intent of [Rule 74.04(c) ] is that the ten day notice is mandatory," *Joachim,* 764 S.W.2d at 650. In the case at hand the summary judgment motion was filed and argued the same day. Therefore, the requirements of Rule 74.04(c) were not met.

The respondent argues that even if it did not meet the requirements for summary judgment the trial court's decision should be upheld as a motion to dismiss on the pleadings. Again we disagree with the respondent in that we find that the statute of limitations did not run on the appellants' wrongful death claim.

■■■ Under both Missouri Rule 53.01 and Federal Rule of Civil Procedure 3, after which the Missouri rule is patterned, "A civil action is commenced by filing a petition with the court."[2] In the case of *Longo v. Pennsylvania Electric Co.,* 618 F.Supp. 87 (W.D.Pa.1985) *aff'd,* 856 F.2d 183, 856 F.2d 184 (3d Cir.1988) the court dealt with the issue of whether the statute of limitations had run when the motion to amend complaint setting forth a new party defendant was filed with the court before the statute of limitations expires. The order granting this motion, however, was not granted until after the statute had run. The court, in finding that the statute had not run, ruled that "the timely filing of this motion to amend and not the final court approval was sufficient to meet the requirement of Fed.R.Civ.P. 3." *Longo,* 618 F.Supp. at 89. When a Missouri Rule is adopted from a Federal rule, the Federal law construing the rule is strong persuasive authority. *Albate v. Tortolano,* 782 S.W.2d 810, 813 (Mo.App.1990). The situation in the case at hand is the same as in *Longo.* The appellants filed their motion adding a new party defendant before the statute of limitations ran but the motion was not granted until after the statute's limit. Therefore, we find that the appellants timely filing of their motion, rather than the final court approval, was sufficient to meet the requirements of Rule 53.01.

---

1. Amoco and Hurlbut were later dismissed from the cause of action.

2. The federal rule refers to complaint rather than petition.

The respondent's final contention is that the appellants' second point is moot if we adversely rule against the appellants' first point. That contention is correct as to the disposition of the negligent hiring allegation. However, the wrongful death action was brought against the respondent in five different counts. Therefore, we reverse and remand as to the trial court's granting of summary judgment as to these other four counts.

Affirmed in part, reversed in part and remanded for further action in accordance with this opinion.

STEPHAN and CRIST, JJ., concur.