**BELLON WRECKING & SALVAGE COMPANY, Appellant,**

v.

**John M. ROHLFING, et al., Respondents.**

**No. ED 80127.**

Missouri Court of Appeals,
Eastern District,
Division Three.

July 30, 2002.

704

Lester Hubble, Welsh & Hubble, P.C., St. Louis, MO, for Appellant.

Bert L. Gates, Kuelker, Oates, Schaumann, St. Louis, MO, for John M. Rohlfing.

James L. Rohlfing, Brassil & Rohlfing, St. Louis, MO, for Janice Rohlfing.

Mary Jamis Kresyman, Clayton, MO, for Keith Kalkbrenner.

John N. Borbonus, Jeff R. Wagener, King, Krehbiel, et al., St. Louis, MO, for St. Louis University.

PAUL J. SIMON, Judge.

Bellon Wrecking & Salvage Company (appellant) appeals the judgment entered in favor of John Rohlfing (Rohlfing) and Keith Kalkbrenner (Kalkbrenner), doing

business as the St. Louis Hardwood Building Partnership (Partnership), and Saint Louis University (University) (collectively respondents), on their motion for summary judgment.

On appeal, appellant contends that the trial court erred by: (1) granting respondents' motion for summary judgment on appellant's quantum meruit claim for extra compensation because there existed genuine issues of material fact as to whether the work in question was contemplated by the contract or controlled by it, in that the parties to the contract each referred to the work as not anticipated; and (2) entering summary judgment against appellant for failure to provide the notice of lien in the exact manner and at the time required by section 429.012.1 RSMo (2000) (all further references herein shall be to RSMo 2000 unless otherwise noted) because there existed genuine issues of material fact in that the trial court "overlooked substantial compliance in that it mischaracterized appellant's settlement letter as a first invoice and failed to recognize substantial compliance through the notice to owner given (sic)." We reverse and remand.

Summary judgment is a drastic remedy, bordering on a denial of due process and effectively denying the opposing party a day in court. *Butler v. Hurlbut*, 826 S.W.2d 90, 94 (Mo.App. E.D.1992). Therefore, when considering an appeal from an entry of summary judgment, we review the record in the light most favorable to the non-movant. *Ackerman Buick v. General Motors Corporation*, 66 S.W.3d 51, 53 (Mo.App. E.D.2001). The propriety of summary judgment is purely an issue of law and our review is essentially *de novo*. The criteria we apply in determining the propriety of summary judgment are no different from those that should be employed by the trial court in making its initial determination. *Id.*

The movant's burden on its motion for summary judgment is to show a right to judgment flowing from facts about which there are no genuine disputes. *Id.* at 53, 54. The movant may establish its right to summary judgment by showing: (1) facts that negate any one of the non-movant's element facts; (2) that the non-movant has not been able to produce and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the non-movant's elements; or (3) that there is no genuine dispute as to the existence of facts necessary to support the movant's properly pleaded affirmative defense. *Id.* at 54.

The non-movant must show by affidavit, depositions, answers to interrogatories, or admissions on file, that one or more material facts shown by the movant to be beyond any genuine dispute is, in fact, genuinely disputed. *Id.* A "genuine issue" is a real, non-frivolous dispute, which exists where the record contains competent materials showing two contradictory, plausible accounts of the essential facts. *Id.* Such dispute is real and not merely argumentative, imaginary, or frivolous. *Id.*

The record in the light most favorable to appellant, the non-movant, reveals that Rohlfing and Kalkbrenner were partners of and doing business as the Partnership, which owned property under contract for sale to the University, which in turn wanted a building located on the property demolished prior to closing.

The Partnership sought bids from several companies, including appellant, for the demolition. Appellant was experienced in demolition and examined the building on three separate occasions prior to the bidding. On one such occasion, Rohlfing took appellant and other prospective bidders on a one-hour tour of the building, during which he informed appellant that the Partnership had filled some machine pits locat-

ed in the building floor with "rock and gravel" and then covered them with a layer of concrete, at a cost of approximately $15,000. The pits themselves could not be seen and, though it was in his possession, Rohlfing did not give appellant a copy of a schematic showing the layout of the property and location of the pits.

Thereafter, appellant and the Partnership entered into a written contract for demolition of the building, which provided, inter alia:

1) [Appellant] will make the necessary arrangements for disconnection of electricity and gas.

2) Water taps will be destroyed and sewer will be capped.

3) Freon from air-conditioning equipment will be removed per EPA Regulations.

4) We will obtain all necessary permits.

5) We will demolish the building hauling all combustible material to an appropriate landfill, including footings, foundations and floors.

6) The site will be fine graded to match existing grade and seeded.

7) We will remove all asphalt and concrete paving and sidewalks on said property.

* * *

9) The structure will be razed in a first-class, work-man-like manner, utilizing both heavy equipment and hand-wrecking procedures as the situation requires.

* * *

13) The above will be completed at a cost of [$103,600] and the environmental portion will be completed at a cost of [$20,000]. Total cost of demolition and environmental work [$123,600].

A signed addendum to the contract provided, in pertinent part:

* * *

Contractor further agrees to demolish all buildings and improvements and underground storage tanks that are on the property and that such work will be completed in accordance with all local, state and federal regulations.

This contract is for demolition and removal of the present building that occupies the site. If underneath this building, there are other buried improvements from previous structures that removal is not included in this contract.

Pursuant to the contract, appellant began demolishing the building, after which Rohlfing delivered a copy of the schematic to appellant. Upon excavation, appellant discovered approximately twenty solid, concrete equipment bases as much as six feet thick located at the bottom of the machine pits. Appellant had not foreseen this condition and the bases were "altogether different from the pits." Appellant began removing the bases on November 18, 1998, and informed Rohlfing that the bases were "real thick, we've got a problem."

Rohlfing visited the site to review the situation. He did not instruct appellant to stop work, and told appellant that he would inform the University of the problem.

On November 23, 1998, Rohlfing sent Donald Bellon (Bellon), president of appellant, a facsimile of a draft of a letter he later sent to the University. The language therein described the problems with the concrete bases, and stated that Rohlfing thought the "thick concrete" was "something which was not anticipated and not budgeted in the original bid."

One week later, Bellon sent a letter to Rohlfing, in which he complained about not being given or shown the schematic showing the quantity and location of the bases prior to the bidding, and indicated that, had the schematic been presented to the bidders, "there surely would have been a major discussion on this topic." He added: "Unless you want me to stop which you haven't yet indicated—I will be looking to [the Partnership] to reimburse my [costs]."

Rohlfing responded on December 2, 1998, informing Bellon that he had communicated the situation to the University, the University informed him that it was not willing to pay additional costs for the demolition, and he did not have funds to pay for removal of the bases. He added: "[The University's] explanation was that demolition companies should have sufficient expertise to properly evaluate the work to be done and price it accordingly, that most companies provide some padding in case they run into something unusual, that your bid was not significantly lower than the other demolition companies, and finally that the University does not routinely renegotiate these types of contracts." Rohlfing then indicated that he would make a second plea to the University.

On December 21, 1998, Bellon sent another letter to Rohlfing in which he stated: "This letter is sent to you in an attempt to settle the extra work I performed on the [demolition] project," and indicated that enclosed with the letter was a "summary of the extra expense associated with removing the numerous concrete bases throughout the entire complex." He further stated that he believed the University had a "responsibility in the matter" and that if, along with the "lot of useless information for the demolition and site cleanup" provided prior to the bidding, the University had given the bidders "that one

sheet showing the layout of the bases that surely would have showed the magnitude of the work involved and increased all the bids." Bellon advised Rohlfing that, although the contract referred to demolishing the building "hauling all combustible material to appropriate landfill including footings, foundations and floors," such language did not include "machine pads or bases," and, further, that if Bellon's bid was an average of the "four demolition prices—then no one anticipated this magnitude of breaking and removal." Bellon concluded:

Because of my relationship with you and [the University]—I'll settle this matter for [$50,000]. This won't cover all my costs but I'm willing to compromise. Please let me know what yours and [the University's] positions are in this matter. If I do not receive a reply from you by Monday, December 28, 1998, I will proceed with filing a mechanic's lien against the property and a suit against [the Partnership] and [the University] for the full amount of the money owed us—[$74,105].

Attached to the letter was a document entitled "Summary of Work Associates (sic) with Removal of Thick Concrete Bases" (Summary). The Summary included an itemized list of the costs associated with the removal of the bases totaling $74,105. The list did not include the costs associated with the demolition.

On January 12, 1999, Bellon sent a third letter to Rohlfing along with a document entitled "Invoice," which included an itemized list of all of the work performed by appellant, a total for the cost of the demolition not including removal of the bases, $120,135, and a total under the heading "extra work" for the removal of the bases, $74,105, for a total cost of $194,240. This number less a "credit payment of $120,635" yielded a "TOTAL AMOUNT

DUE" of $74,105. At the bottom of the invoice was the following language:

### NOTICE TO OWNER

Failure of this contractor to pay those persons supplying material or services to complete this contract can result in the filing of a mechanic's lien on the property which is the subject of this contract pursuant to Chapter 429 RSMo. To avoid this result, you may ask this contractor for "lien Waivers" from all persons supplying material or services for the work described in this contract. Failure to secure lien waivers may result in your paying for labor and materials twice.

Rohlfing received and read the notice.

On February 9, 2000, appellant filed a two-count petition against Rohlfing and Kalkbrenner doing business as the Partnership, James Rohlfing and Janice Rohlfing, and the University. In its petition, appellant identified James Rohlfing, Janice Rohlfing, Rohlfing, and Kalkbrenner, as individuals doing business as the Partnership, and, collectively, "Defendant Owners," and the University as a non-for-profit corporation. In its first count, a Suit to Enforce Mechanic's Lien based on a contract theory, appellant alleged that: (1) Defendant Owners entered an agreement authorizing the Partnership to act as its agent and enter into an agreement with appellant to furnish labor and materials to the property, for which Defendant Owners agreed to pay the reasonable value thereof, all of which labor and materials were supplied by appellant; (2) "each and every item of said contract was furnished for said real estate, buildings and improvements on the faith and credit of [appellant's] Mechanic's Lien Claim against said real estate and improvements; that all of the items of said contract were furnished under one arrangement and constituted one continuous running account; during the course of work [appellant] was required to perform extra and additional work under the Contract; [Defendant Owners have] breached the contract by failing to make payment; that although frequent demand for payment has been made, the balance due remains unpaid, after all just credits have been allowed;" (3) on August 13, 1999, within six months after "said account accrued," appellant "filed its Mechanic's Lien account in the Office of the Clerk of this Circuit Court, all as required by law being [mechanic's] lien number 34556;" (4) appellant complied with the notice requirements of sections 429.012 and 429.100 by providing the notice to the owners on its invoices; and (5) pursuant to section 431.180, appellant was entitled to reasonable [attorney] fees and interest at 18% per annum. Appellant therefore requested that the trial court enter judgment against Rohlfing and Kalkbrenner doing business as the Partnership, in the sum of $74,105 as well as interest, attorney fees, costs, and special judgment.

In its second count, "Quantum Meruit and Enforcement of Mechanic's Lien," appellant incorporated the first count and further alleged that: (1) The Partnership "is justly indebted to [appellant] in the sum of [$74,105], said sum being the reasonable value of labor, materials and equipment furnished by Bellon at the special instance and request of Defendant [the Partnership];" (2) the prices charged by appellant constituted a reasonable charge, the balance of which the Partnership failed and refused to pay despite demand; and (3) the Partnership accepted the labor and materials supplied by appellant. Appellant therefore requested that the trial court enter judgment against Rohlfing and Kalkbrenner doing business as the Partnership, in the sum of $74,105 together with interest, costs, and "a special judg-

ment that [appellant had] a valid and existing Mechanic's Lien against the real property."

James Rohlfing and Janice Rohlfing filed a *pro se* "Separate Answer" in which they denied generally the allegations in counts one and two of appellant's petition, and further alleged as affirmative defenses to both counts that appellant failed to state a claim or cause of action against them.

The University filed its answer and denied generally the allegations in counts one and two of the petition and further alleged as affirmative defenses that appellant's petition failed to state a claim upon which relief could be granted against it and appellant was barred from recovery by virtue of its failure to: (1) provide the requisite statutory notices required by sections 429.012 and 429.100; (2) perform its work in a workmanlike manner; (3) file its mechanic's lien statements within six months after the alleged indebtedness accrued as required by section 429.080; and (4) file its mechanic's lien petition within six months after filing the respective mechanic's lien statements.

On April 25, Rohlfing filed a "Separate Answer," in which he admitted that: (1) he and Kalkbrenner did business as the Partnership and owned the property; (2) the Partnership entered into a contract with appellant in which appellant agreed to demolish the building "for a fixed price designated by [appellant];" (3) the contract provided for labor and materials to be provided by appellant for the fixed price as designated by appellant; and (4) appellant was paid all funds due under the contract. Rohlfing denied generally the remainder of the allegations.

Kalkbrenner filed his answer on April 26, 2000, in which he denied generally the allegations contained in appellant's petition, and, as an affirmative defense, alleged the petition failed to state claims against him upon which relief could be granted.

James Rohlfing and Janice Rohlfing filed a *pro se* Motion to Dismiss on September 29, 2000, in which they alleged that appellant failed to state a cause of action upon which relief could be granted against them.

On February 15, 2001, Rohlfing, doing business as the Partnership, filed a Motion for Summary Judgment alleging that: (1) the contract provided for appellant to demolish and completely remove the building including footings, foundations, and floors; (2) appellant had access to the building on three separate occasions and an opportunity to measure the building prior to preparing the contract; (3) appellant was aware of the existence of machine pits in the floor of the building prior to preparing the contract; (4) the only work not included in the contract was the removal of "other buried improvements from previous structures;" (5) appellant was experienced in the work of demolition and was the person who designated the scope of work in the contract; (6) the contract set a fixed price of $123,600 for the demolition and removal of the building, said amount being set by appellant; (7) appellant was paid the full amount due under the contract; (8) the contract contained no provisions for change orders or that appellant be paid "the reasonable value of the work done;" (9) the bases were part of the floor of the building and not "buried improvements from a previous building;" (10) appellant began removal of the concrete bases one week before it told Rohlfing of the difficulty with the bases; (11) Rohlfing never requested or authorized appellant to do any additional work not provided for in the written contract with respect to the bases; (12) Rohlfing told appellant that he had no money and could not pay for any extra work; (13) work on the bases began on

November 18, 1998 and ended on December 9, 1998; (14) appellant's mechanic's lien statement of account was filed on August 13, 1999; (15) the "Notice to Owner" required by Section 429.012 was not given by appellant at the time of the execution of the contract, nor when materials were delivered nor when the work was commenced; (16) no "Notice to Owner" was given with Bellon's letter to Rohlfing of December 21, 1998; (17) Bellon's December 21, 1998 letter was a written, itemized statement of the work done by appellant with quantities and charges and with a demand for payment; (18) the written itemized statement and quantities and charges contained in the December 21, 1998 letter were identical to the written itemized statement and quantities and charges contained on appellant's invoice sent to Rohlfing on January 12, 1999; (19) the statutory "Notice to Owner" contained in the January 12, 1999 invoice was not in bold print; (20) the work on the bases began on November 18, 1998 and ended on December 9, 1998; (21) appellant's mechanic's lien statement of account was filed on August 13, 1999; (22) the Notice to Owner required by section 429.012 was not given by appellant at the time of the execution of the contract, nor when the materials were delivered nor when the work was commenced; (23) no Notice to Owner was given with Bellon's letter to Rohlfing on December 21, 1998; (24) Bellon's letter of December 21, 1998, was a written itemized statement of the work done by appellant with quantities and charges and with a demand for payment by appellant; (25) the written itemized statement contained in the letter of December 21, 1998 was identical to the written itemized statement and quantities and charges contained in the January 12, 1999 document entitled "Invoice;" and (26) the Notice to Owner in the January 12, 1999 document entitled "Invoice" was not in bold print. In support of

its motion, Rohlfing filed copies of the petition, a copy of the November 30, 1998 letter from Bellon to Rohlfing, a copy of the December 2, 1998 letter from Rohlfing to Bellon, a copy of the December 21, 1998 letter from Bellon to Rohlfing along with the attached Summary, a copy of the January 12, 1999 letter from Bellon to Rohlfing and the attached document entitled "Invoice," and the deposition of Bellon.

Through separate motions, Kalkbrenner and the University joined in Rohlfing's motion for summary judgment.

Thereafter, appellant filed its response to the motion for summary judgment, in which it alleged, in pertinent part, that: (1) the contract did not call for the removal of concrete bases; (2) the removal of the bases was "extra work over and above the contract;" (3) appellant performed "extra and additional work on the project for which it has not been paid;" (4) some of the pits did not have floors, they had "huge bases;" (5) Rohlfing was aware of the work being done to remove the bases and did not request appellant to stop; (6) the December 21, 1998 letter was a settlement letter, not an invoice; (7) the Notice to Owners language contained in the invoice was identical to that called for by 429.012; (8) when Rohlfing received the January 12, 1999 "Invoice" he read the "Notice to Owner;" and (9) the concrete bases encountered were "beyond the scope of the original contract" and "an unforeseen condition." In support of its response, appellant filed a copy of the schematic, a copy of the contract, a November 23, 1998 fax cover-sheet and letter of the same date from Rohlfing to Kathleen Brady at the University, a copy of the November 30, 1998 letter from Bellon to Rohlfing, two copies of photos of the concrete bases, a copy of the December 2, 1998 letter from Rohlfing to Jonathan Fleece of the University and a letter of the same date from

Rohlfing to Bellon, a copy of a December 3, 1998 facsimile from Rohlfing to Bellon, a copy of the December 21, 1998 letter from Bellon to Rohlfing and the attached summary of work associated with the base removal, a copy of the January 12, 1999 letter from Bellon to Rohlfing and the attached document entitled "Invoice," a copy of the deposition of Rohlfing, and a copy of the affidavit of Bellon.

The trial court entered its judgment on July 25, 2001, granting James Rohlfing's and Janice Rohlfing's motion to dismiss for failure to state a claim and Rohlfing's, Kalkbrenner's, and the University's motion for summary judgment. The judgment included an attached Memorandum Opinion, which indicated that James Rohlfing's and Janice Rohlfing's motion to dismiss was granted because the petition sought no relief directed at them, they were not parties to any contract with appellant, and their only relationship to the property at issue was as co-owners. James Rohlfing and Janice Rohlfing are not parties to this appeal. With respect to the motion for summary judgment, the trial court found that because the contract did not provide for extra work, appellant's recovery had to be in quantum meruit, the second count of appellant's petition. With respect to the second count, the trial court found that while Rohlfing and Kalkbrenner did not specifically request appellant to remove the concrete bases, their acquiescence was enough to support appellant's quantum meruit claim. However, the court then found that "the undisputed facts show that [appellant] was paid the full contract price, that [appellant] did not perform extra work, that the required written notice was not given with the invoice dated December 21, 1998, and that the January 12, 1999 written notice failed to contain bold type."

In its first point on appeal, appellant contends that the trial court erred in granting respondents' motion for summary judgment with respect to its quantum meruit claim for extra compensation because there existed genuine issues of material fact as to whether the work in question was contemplated by the contract or controlled by it, in that the parties to the contract each referred to the work as not anticipated.

The trial court held that, though the determination of whether an item or activity is "extra" and not something already contemplated under the contract is a question of fact, it was "doubtful" that appellant's contention that removal of the bases could be "plausibly be considered anything other than an unanticipated condition" and, further, that the removal of the bases was "clearly not entirely independent of appellant's obligation under the contract to demolish and remove the building, including the footing, foundations, and floors." The trial court therefore concluded that appellant could not recover under a quantum meruit theory.

A quantum meruit claim is based upon a legally implied promise that a party will pay reasonable compensation for valuable services or materials provided at the request or with the acquiescence of that party. *Kujawa v. Billboard Cafe at Lucas Plaza,* 10 S.W.3d 584, 588 (Mo.App. E.D. 2000). The principal function of this type of implied contract is the prevention of unjust enrichment, and a claim for quantum meruit does not require the existence of an express agreement between the parties. *Kujawa* at 588. In cases of quantum meruit recovery, the party viewed as breaching the implied contract is required to return to the injured party the reasonable value of work and labor furnished. *Id.*

Appellant, in its petition, alleged it was entitled to recovery in quantum meruit because of the "extra and additional"

work it performed. In the context of building contracts, extra work refers to "work not contemplated by the parties at the time of contract and entirely independent of what is required in performance of the contract." *Wisch & Vaughan Construction Co. v. Melrose Properties,* 21 S.W.3d 36, 40 (Mo.App. S.D.2000). Additional work, on the other hand, is work "necessarily required in the performance of the contract, but the necessity of which arises from unanticipated conditions." *Id.*

The determination of whether an activity is "extra" and not something contemplated under the contract is a question of fact. *Gilmartin Brothers, Inc. v. Kern,* 916 S.W.2d 324, 331 (Mo.App. E.D.1995). Here, there is a dispute as to whether removal of the concrete bases was extra and not contemplated under the contract. Though the trial court found and respondent argues that removal of the concrete bases was not independent of appellant's obligation under the contract to demolish and remove the building, including the footing, foundations, and floors, there is evidence to the contrary. Bellon testified by deposition that removal of the bases was "extra over and above [his] contract and [he was] entitled to it," and that the work was not more than he had anticipated, but rather "altogether unforeseen conditions (sic) that were in the building that we should have been told about going into this building." Bellon further testified that some of the pits "didn't really have a floor," they "had a huge base that acted like a floor," and that "You wouldn't know—it wasn't a floor, though. It was actually a base." When asked about the structure of the pits, Bellon responded: "Well, the pit is a—a hollow structure that Mr. Rohlfing said he put rock into and covered over, as opposed to a base which is a solid chunk of concrete in the ground." Bellon added that the bases were "altogether different from the pits." Though Rohlfing had the schematic indicating the location of the pits in his possession, he did not provide it to appellant prior to contracting. Finally, in his November 23, 1998 letter to the University, Rohlfing stated that the "thick concrete" was "something which was not anticipated and not budgeted in the original bid."

We find a genuine factual dispute as to whether the removal of the concrete bases was extra and not something contemplated under the contract, and summary judgment was therefore improper with respect to this issue. *Gilmartin,* 916 S.W.2d at 331.

In its second point on appeal, appellant argues that the trial court erred in entering summary judgment in favor of respondents for failure to provide the notice of lien in the exact manner and at the time required by section 429.012.1 because there existed genuine issues of material fact in that the trial court overlooked substantial compliance in that it mischaracterized appellant's settlement letter as a first invoice and failed to recognize substantial compliance through the notice "to owner given (sic)."

Section 429.012 provides, in pertinent part:

1. Every original contractor, who shall do or perform any work or labor upon, or furnish any material, fixtures, engine, boiler or machinery for any building, erection or improvements upon land, or for repairing the same under or by virtue of any contract, or without a contract if ordered by a city, town, village or county having a charter form of government to abate the conditions that caused a structure on that property to be deemed a dangerous building under local ordinances pursuant to [section 67.410], shall provide to the person with whom the contract is made or to the

owner if there is no contract, prior to receiving payment in any form of any kind from such person, (a) either at the time of the execution of the contract, (b) when the materials are delivered, (c) when the work is commenced, or (d) delivered with first invoice, a written notice which shall include the following disclosure language in ten-point bold type:

NOTICE TO OWNER

FAILURE OF THIS CONTRACTOR TO PAY THOSE PERSONS SUPPLYING MATERIAL OR SERVICES TO COMPLETE THIS CONTRACT CAN RESULT IN THE FILING OF A MECHANIC'S LIEN ON THE PROPERTY WHICH IS THE SUBJECT OF THIS CONTRACT PURSUANT TO CHAPTER 429, RSMO. TO AVOID THIS RESULT YOU MAY ASK THIS CONTRACTOR FOR "LIEN WAIVERS" FROM ALL PERSONS SUPPLYING MATERIAL OR SERVICES FOR THE WORK DESCRIBED IN THIS CONTRACT. FAILURE TO SECURE LIEN WAIVERS MAY RESULT IN YOUR PAYING FOR LABOR AND MATERIAL TWICE.

2. Compliance with subsection 1 of this section shall be a condition precedent to the creation, existence, or validity of any mechanic's lien in favor of such contractor.

This notice provision requires original contractors to provide specific notice to the party with whom the contract for work was made before bringing suit. *Gauzy Excavating and Grading Company v. Kersten Homes, Inc.*, 934 S.W.2d 303, 304 (Mo.banc 1996). The purpose of the notice provision is "to warn inexperienced property owners of the danger to them which lurks in the mechanics' lien statute." *Id.* Where a petition and proof fail to

establish such notice, "there is no cause of action alleged or proven and the lien is null and void." *Financial Design Consultants v. McCarver*, 712 S.W.2d 738, 740 (Mo. App.1986). Though our courts have required strict compliance with this provision and been reluctant to allow exceptions other than those provided for under the statute, we have found substantial compliance with the statute where the facts so required. *Gauzy Excavating* at 305. *See Overberg Decorating Center, Inc. v. Selbah Properties, et al.*, 741 S.W.2d 879 (Mo.App. E.D.1987) (respondent substantially complied with section 429.012 by written notice and went further by providing the owner with protection from hidden liens).

Relying upon the dictionary definition of "invoice," the trial court concluded that the summary attached to the December 21, 1998 letter from Bellon to Rohlfing was an invoice, and that since it was "clear that the statutory notice was not delivered with that letter, the conditions precedent of [section 429.012 had] not been satisfied." The trial court further concluded that even if the January 12, 1999 document entitled "Invoice" was the first invoice, the notice accompanying the invoice was inadequate because it was not in bold type as required by section 429.012.

An invoice is "an itemized list of goods or services furnished by a seller to a buyer, [usually] specifying the price and terms of sale; a bill of costs." BLACK'S LAW DICTIONARY 833 (7th ed.1999). There is a dispute as to whether the December 21, 1998 letter and attachment constituted an invoice under section 429.012, or a letter proposing a settlement with an attached list in support.

The first sentence of the December 21, 1998 letter reads: "This letter is sent to you in an attempt to settle the extra work I performed on the [demolition]. As I have discussed with you enclosed is a sum-

mary of the extra expense associated with removing the numerous concrete bases throughout the entire complex." Contrary to the conclusions of the trial court and respondents, the attached list, conspicuously entitled "Summary of Work Associates (sic) with Removal of Thick Concrete Bases," did not include the quantities and charges identical to those in the January 12, 1999 statement. Rather, the list only included a summary of the work performed by appellant in removing the concrete bases. A reading of the letter of December 21, 1998 in its entirety indicates it may not have been an invoice; but rather, an attempt to settle a dispute with an attached list to validate the settlement offer. While the nature of an invoice is that of a demand for payment, i.e., a bill of costs, a settlement offer is in the nature of a proposal.

We therefore find a genuine factual dispute as to whether the December 21, 1998 letter constituted an invoice. However, this finding is not dispositive in that the trial court further concluded that even if the January 12, 1999 letter was the original invoice, appellant failed to meet the conditions precedent of 429.012.1 in that the notice provision contained in the January 12, 1999 letter was not in bold type. The court found, in pertinent part:

> [Appellant] looks to [*Overberg*, 741 S.W.2d 879], which found sufficient substantial compliance with [section 429.012] in a notice that went "further by providing the owner with protection from hidden liens." *Id.* at 881. The holding was limited to the particular circumstances of the case. [*Id.*, *Gauzy Excavating*, 934 S.W.2d 303, 305]. Again, a condition precedent has not been satisfied.

In *Overberg*, plaintiff provided the following notice in its contract with defendant for the delivery of certain labor and materials:

> 15.4 Final payment shall not be due until the Contractor has delivered to the Owner a complete release of all liens arising out of this Contract or receipts in full covering all labor, materials and equipment for which a lien could be filed, or a bond satisfactory to the Owner indemnifying him against any lien. If any lien remains unsatisfied after all payments are made, the Contractor shall refund to the Owner all moneys the latter may be compelled to pay in discharging such lien, including all costs and reasonable attorney's fees.

*Id.* at 880.

Following a payment dispute with defendant, plaintiff brought suit to enforce a mechanic's lien. *Id.* On appeal from a judgment in favor of plaintiff, defendant argued that the notice in the contract language did "not reasonably and substantially comply with the mandated statutory language" of section 429.012, and, rather, that it exhibited "total noncompliance with the statute." *Id.* We affirmed, finding that the provision went further than section 429.012 and holding:

> Section 429.012 requires notice of the possibility of double payment and preventive steps that can be taken; paragraph 15.4 provides notice of the possibility of liens and provides protection therefrom as a condition of the contract. We believe respondent substantially complied with [section 429.012] and went further by providing the owner with protection from hidden liens.

*Id.* at 881.

We further noted that defendant itself provided the contract and was a corporation implicitly knowledgeable regarding mechanics' liens, and limited our holding to the particular circumstances of the case. *Id.*

In *Gauzy Excavating*, 934 S.W.2d 303, plaintiff and defendant entered into an oral

agreement under which plaintiff was to dig basements and trenches for sewer lines for a subdivision owned and being developed by defendant. *Id.* at 304. Following defendant's failure to make payments, plaintiff filed a mechanic's lien and sued to enforce it. *Id.* No written notice had been given to defendant. *Id.* at 305. On appeal from a judgment in favor of plaintiff, defendant argued that plaintiff's mechanic's lien was invalid because plaintiff failed to give the notice required by section 429.012.1. *Id.* at 304. Our Supreme Court agreed, distinguishing *Overberg:*

> Without passing on the general propriety of the substantial compliance exception announced in [*Overberg* ], we distinguish the two cases on their facts. [*Overberg* ] contained a written contract between the contractor and the owner in which the owner's protection from mechanic's liens was carefully and clearly provided in language the Court of Appeals deemed substantially equivalent to the statutory notice. In contrast, [plaintiff and defendant] had merely an oral agreement under which [plaintiff] would perform excavation work for a certain fee, and moreover, no evidence was introduced that the oral agreement set out the notice requirement in terms substantially equivalent to those used in the statute. Even under [*Overberg* ], the original contractor must provide 1) notice in writing and 2) notice that comports with the words used in the statute. [Plaintiff] failed to satisfy these conditions.

*Id.* at 305.

Here, appellant alleged in its petition that it complied with the notice requirements of section 429.012 and attached the January 12, 1999 document entitled "Invoice" with the notice provision as an exhibit. It appears that the language contained in the notice provided by appellant mirrored that required under section 429.012.1, with the following exceptions: (1) the body of the provision was not in caps; (2) the language appears to have been in 12 point, rather than 10 point, font; (3) the language was not in bold-face type; (4) the last sentence of the notice substituted the word "material" with "materials." Notably, the only deficiency found by the trial court was the lack of bold-face type.

Here, the facts are similar to those encountered in *Overberg,* and not those in *Gauzy Excavating.* As in *Overberg,* appellant provided Rohlfing with written notice. Further, the language provided by appellant tracked section 429.012.1; whereas, the language provided by plaintiff in *Overberg* did not. In *Gauzy Excavating,* unlike this case or *Overberg,* plaintiff provided no written notice to defendant.

As stated, the purpose of the section 429.012.1 notice provision is to warn inexperienced property owners of the "dangers" which "lurk" in the mechanics' lien statute. Here, however, the parties are business persons. The fact that the notice was *not in bold print, a requirement meant* to bring attention to the language, is not of significant import, as Rohlfing read the notice. Further, the only alteration in the specific language of the notice, i.e., "materials" instead of "material," does not effect the meaning of the provision. Therefore, we conclude that the notice given by appellant substantially complied with the requirements of section 429.012.1.

We reverse and remand for proceedings consistent with this opinion.

GARY M. GAERTNER, Sr., P.J. and CLIFFORD H. AHRENS, J., concur.