22 So.3d 948 (2009)
Margaret Anne Coady LATIOLAIS
v.
TEACHERS' RETIREMENT SYSTEM OF LOUISIANA.
No. 2008 CA 1792.
Court of Appeal of Louisiana, First Circuit.
August 24, 2009.
*949 Harry P. Pastuszek, Jr., David S. Pittman, Linnette C. Goodly, Covington, Louisiana, for Plaintiff-Appellee, Margaret Anne Coady Latiolais.
John L. Stone, III, Baton Rouge, Louisiana, for Defendant-Appellant, Teachers' Retirement System of Louisiana.
Before: CARTER, C.J., WHIPPLE, KUHN, GUIDRY, and GAIDRY, JJ.
KUHN, J.
The Teachers' Retirement System of Louisiana (TRSL) appeals a summary judgment rendered in favor of a designated beneficiary, declaring that the beneficiary is entitled to Option 2 retirement benefit payments pursuant to La. R.S. 11:783 A(2), plus interest. We affirm in part, reverse in part, and remand.

I. PROCEDURAL AND FACTUAL BACKGROUND
On August 11, 2002, Mary Christina Coady, who worked in the St. Charles Parish School System and was a member of TRSL for over 25 years, completed an "Application for Service Retirement," wherein she indicated she was divorced, and specified January 22, 2003, as her effective retirement date. Section 4 of the TRSL form addressed "Retirement option beneficiary," and stated, in pertinent part, "You may designate one beneficiary below to receive a monthly survivor benefit in the event of your death." In this section of the form, Coady designated her sister, Margaret Anne Coady Latiolais, as her beneficiary and also provided her birth date and Social Security number. In filling out the application, Coady also struck *950 through Sections 2, 5, and 6 of the application form that referenced an "Initial Lump Sum Benefit." TRSL received Coady's application on August 28, 2002, and according to TRSL's records, it acknowledged receipt of the application by letter dated September 3, 2002.
Coady died on February 27, 2003, before TRSL had finalized her retirement application. TRSL updated its system to reflect her death, and notified Latiolais that because Coady had died more than thirty days after the effective date of retirement, but before TRSL had received her Affidavit of Retirement Option Election ("the retirement affidavit"), Latiolais would receive the Option 1 beneficiary benefit, i.e., a single life annuity in a one-time payment, which represented the present value of Coady's annuity at the time of her retirement.
On March 1, 2006, Latiolais filed a petition, seeking a declaratory judgment determining the applicability and scope of La. R.S. 11:783 A and H and a judgment in her favor ordering TRSL to pay her Option 2 benefits, a reduced retirement allowance paid throughout her life from the date of Coady's death, along with attorneys' fees, penalties, legal interest and costs. Latiolais's petition also set forth pertinent portions of a TRSL publication, dated July 2002, entitled "When It's Time to Retire," which is a guide to the TRSL retirement process that was mailed to TRSL members when they requested benefit estimates. The publication states as follows, in pertinent part:[1]
TRSL sends retirement affidavit
Once your application is processed, TRSL will send you an Affidavit of Retirement Option Election based upon the most current information available to TRSL. The affidavit will list the benefit amount for each of the retirement options.
Within 15 days, return notarized retirement affidavit
It is vitally important that this affidavit be completed, notarized, and returned to TRSL within 15 days of receipt. By selecting an option and returning the affidavit, you indicate under which option you wish to retire. This is a critical step in the retirement process.
Based on these provisions, Latiolais asserted that TRSL had a legal duty to provide the retirement affidavit form to Coady, but TRSL failed to do so. The petition further asserts that Coady died more than thirty days after her effective retirement date, and that Latiolais has demanded, but has been unjustly denied, Option 2 benefits by TRSL since Coady's death.
After TRSL answered the suit, Latiolais filed a motion for summary judgment, urging that based on TRSL's error, she had been denied the correct retirement allowances pursuant to Option 2. In support of her motion, Latiolais submitted her own affidavit, wherein she attested that she was "very close" to Coady, her sister, and she "spent considerable time with her during her final six months of life." Latiolais *951 further attested that both prior to and after Coady filed her application for retirement benefits, Latiolais "routinely participated in the review of mail received and sent by" her sister and she "routinely discussed business matters, including, but not limited to documents relating to" TRSL. Moreover, Latiolais stated that she was never informed by her sister that she had received the retirement affidavit from TRSL, and "[t]here was never [a retirement affidavit] received in the mail by [her sister] from [TRSL]." Latiolais stated that if a retirement affidavit had been sent to her sister, "via mail or otherwise, I would have known about it." Plaintiff also submitted excerpts of Carolyn Forbes's deposition testimony in support of the motion.
TRSL opposed Latiolais's motion for summary judgment, asserting that genuine issues as to material fact included whether: 1) Coady had ever elected Option 2 pursuant to La. R.S. 11:783 A(2); and 2) TRSL had mailed the retirement affidavit to Coady. In support of its position, TRSL submitted the entirety of Forbes's deposition testimony and the affidavit of Ronnie Mazie, which generally addressed TRSL's mailing operations.[2]
The deposition of Carolyn Forbes, TRSL's retirement benefits manager, established that she had reviewed Coady's certified file record maintained by TRSL, and it did not contain a copy of the retirement affidavit allegedly sent to Coady, a working copy of the retirement affidavit,[3] a cover letter, or any other proof that the retirement affidavit was actually mailed to Coady. She testified that TRSL did not keep a copy of the retirement affidavit in the member's file in late 2002 through early 2003, but their practice was to keep a copy of the supporting worksheet.
Forbes further testified that this supporting worksheet was in Coady's file record, and that according to TRSL's standard practices, a copy of the worksheet was generated along with the retirement *952 affidavit.[4] Forbes explained that during the time period in question, only a copy of the worksheet, and not a copy of the unexecuted retirement affidavit generated with the worksheet, was kept in the member's record. Based on TRSL's standard operating practices at that time and the specific file notations in Coady's file, Forbes testified that a retirement affidavit, also referred to as an estimated affidavit, was generated for Coady on September 3, 2002. Forbes testified that the existence of the worksheet in Coady's file supports TRSL's position that the affidavit was transmitted to Coady.
A hearing on Latiolais's motion was held, and the trial court granted summary judgment in her favor, consequently ordering TRSL to pay Latiolais Option 2 retirement benefits, effective February 27, 2003, plus interest on these payments. TRSL filed a motion for new trial, and on denial of its motion, it moved to suspensively appeal the summary judgment and the denial of its motion for new trial.
On appeal, TRSL alleges that the trial court erred in rendering judgment in Latiolais's favor in the following respects:
1. The trial court erred in granting [Latiolais's] motion for summary judgment even though [Latiolais] is not entitled to judgment as a matter of law.
2. Assuming [Latiolais] has a legal basis for her claim based on an alleged failure of [TRSL] to mail [a retirement affidavit] (which [TRSL] denies) the trial court erred in granting [Latiolais's] motion for summary judgment because a genuine issue of material fact exists.
3. The trial court erred in denying [TRSL's] Motion for New Trial where its Judgment signed on May 20, 2008, was clearly contrary to the law and the evidence.
4. The trial court erred in denying [TRSL's] Motion for New Trial where new evidence was presented in connection with that Motion.
5. The trial court erred in denying [TRSL's] Motion for New Trial by abusing its discretion under [La. C.C.P. art.] 1973.

II. ANALYSIS
A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Summary judgment is favored and shall be construed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2).
The initial burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial, he need not negate all essential elements of the adverse party's claim, but he must point out that there is an absence of factual support for one or more elements essential to the claim. La. C.C.P. art. 966(C)(2). Once the movant has met his initial burden of proof, the burden shifts to the nonmoving party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. Samaha v. Rau, 07-1726, p. 5 (La.2/26/08), 977 So.2d 880, 883. The plaintiff may not rest on mere allegations or denials, but *953 must set forth specific facts that show that a genuine issue of material fact remains. If the plaintiff fails to meet this burden, there is no genuine issue of material fact, and the defendant is entitled to summary judgment as a matter of law. Berry v. Paul Revere Life Ins. Co., 08-0945, p. 3 (La.App. 1st Cir.7/9/09), 21 So.3d 385. The supreme court has held that "[a] fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute." Samaha v. Rau, 07-1726 at p. 6, 977 So.2d at 884 (quoting Hines v. Garrett, 04-0806, p. 1 (La.6/25/04), 876 So.2d 764, 765).
Louisiana Revised Statutes 11:783 provides, in pertinent part:
A. (1) No optional election shall be effective when a retiree or participant in the Deferred Retirement Option Plan dies within thirty days after the effective date of retirement or the effective date of participation in the Deferred Retirement Option Plan, and such a retiree or participant in the Deferred Retirement Option Plan shall be considered as an active member at the time of death.
(2) Upon retirement or participation in the Deferred Retirement Option Plan any member may make an election which is irrevocable after the effective date of retirement or the effective date of participation in the Deferred Retirement Option Plan to receive his benefit in a retirement allowance payable throughout life, or he may make an election which is irrevocable after the effective date of retirement or the effective date of participation in the Deferred Retirement Option Plan to receive the actuarial equivalent of his retirement allowance in a reduced retirement allowance payable throughout life with the provisions that:
Option 1. If he dies before he has received in annuity payments the present value of his annuity as it was at the time of his retirement, the balance shall be paid to his succession or to any person he shall designate in a written instrument acknowledged and filed with the board of trustees.
Option 2. Upon his death, his reduced retirement allowance shall be continued throughout the life of and paid to a natural person he shall irrevocably designate in a written instrument acknowledged and filed with the board of trustees at the time the election is made; or
Option 2A. Upon his death, his reduced retirement allowance shall be continued throughout the life of and paid to a natural person he shall irrevocably designate in a written instrument acknowledged and filed with the board of trustees at the time the election is made, provided that if the designated beneficiary predeceases the retiree, the retiree's reduced benefit shall change to the maximum benefit effective on the first day of the next month following the death of the designated beneficiary.
Option 3. Upon his death, one-half of his reduced retirement allowance shall be continued throughout the life of and paid to a natural person he shall irrevocably designate in a written instrument acknowledged and filed with the board of trustees at the time the election is made; or
Option 3A. Upon his death, one-half of his reduced retirement allowance shall be continued throughout the life of and paid to a natural person he shall irrevocably designate in a written instrument acknowledged and filed with the board of trustees at the time the election is made, provided that if the designated beneficiary predeceases the retiree, the retiree's reduced benefit shall change to *954 the maximum benefit effective on the first day of the next month following the death of the designated beneficiary.
Option 4. Upon his death, some other benefit which shall not exceed the Option 2 benefit amount, designated by him at the time the election is made, shall be paid throughout the life of and to a natural person he shall irrevocably designate in a written instrument acknowledged and filed with the board of trustees at the time the election is made, provided such other benefit, together with the reduced retirement allowance shall be certified by the actuary to be of equivalent actuarial value to his retirement allowance, and approved by the board of trustees; or
Option 4A. Upon his death, some other benefit which shall not exceed the Option 2 benefit amount, designated by him at the time the election is made shall be paid throughout the life of and to a natural person he shall irrevocably designate in a written instrument acknowledged and filed with the board of trustees at the time the election is made, provided such other benefit, together with the reduced retirement allowance, shall be certified by the actuary to be of equivalent actuarial value to his retirement allowance, and approved by the board of trustees, provided that if the designated beneficiary predeceases the retiree, the retiree's reduced benefit shall change to the maximum benefit effective on the first day of the next month following the death of the designated beneficiary.
(3) Initial Lump-Sum Benefit, (a) If a member has not participated in the Deferred Retirement Option Plan provided by the provisions of this Chapter and has thirty years of creditable service, or is age fifty-five and has twenty-five years of creditable service, or is age sixty and has ten years of creditable service, and if the maximum benefit, Option 2, 2A, 3, 3A, 4, or 4A above is chosen, then a reduced retirement allowance plus an initial benefit shall be paid to the member. The accredited service referenced in this Paragraph shall not include unused accumulated sick leave and unused accumulated annual leave.
...
H. If a retiree or a participant in the Deferred Retirement Option Plan dies more than thirty days after the effective date of retirement or more than thirty days after his effective date of participation in the Deferred Retirement Option Plan, but before the retirement system has received his Affidavit of Retirement Plan Election and leaves a surviving spouse, he shall be retired under Option 2 of Subsection A of this Section as of his effective date of retirement and the surviving spouse shall be paid Option 2 beneficiary benefits; however, if he does not leave a surviving spouse but does leave an eligible surviving minor child or children, only the benefits provided under R.S. 11:762(C) shall be payable; and provided that if he does not leave a surviving spouse, he shall be retired under Option 1 of Subsection A of this Section as of his effective date of retirement and his latest named beneficiary including any beneficiary named on his retirement application received by the retirement system shall be paid the Option 1 beneficiary benefit.... (Emphasis added.)
In its first two assignments of error, TRSL urges that Latiolais has the burden of proving that Coady elected Option 2 pursuant to this statute, and otherwise, the option election is determined by La. R.S. 11:783 H. TRSL submits that the record contains no evidence establishing that *955 Coady elected Option 2 rather than the other options listed under La. R.S. 11:783 A(2), and thus, Latiolais is not entitled to judgment as a matter of law. Further, TRSL argues that the trial court erroneously granted summary judgment in favor of Latiolais because genuine issues of material fact exist concerning whether TRSL provided Coady with a retirement affidavit.
In her motion for summary judgment, Latiolais argues that TRSL did not send a retirement affidavit to Coady, which based on TRSL's rules and procedures, it was responsible for producing and providing. Due to its failure to provide the affidavit to Coady, Latiolais asserts that TRSL is precluded from denying Latiolais recovery of Option 2 benefits under the retirement plan.
Based on the pertinent dates involved, Coady died more than thirty days after the effective date of her retirement, and thus she was not considered an active member of TRSL upon her death based on the provisions of La. R.S. 11:783 A. The evidence presented establishes that Coady did not complete and return a retirement affidavit to TRSL, by which she would have exercised her right to select a specific option based on her specific member information. TRSL submits that Latiolais should be relegated to receiving an Option 1 payment because Coady did not complete the retirement affidavit. We find no merit in this argument.
Louisiana Revised Statutes 11:783 H imposes an implicit duty on TRSL to provide this retirement affidavit to a member who submits a retirement application.[5] According to Forbes's deposition testimony, the retirement affidavit provides member-specific information to the member who is making the selection, and this information is needed for her to be able to complete the retirement affidavit. Further, the retirement affidavit is not provided to a member before his or her application for retirement is made.[6] The selection of a retirement option is not to be made in a void, but should be made based on this information, which is made available by TRSL after a worksheet is prepared for the particular member.
Further, Forbes testified that the TRSL publication, entitled "When It's Time to Retire," was routinely sent to members who requested an estimate of their benefits, and in fact, it had been sent to Coady when she requested an estimate of her benefits in 2002. If Coady in fact received this publication, she would have been awaiting the receipt of her retirement affidavit, which would have been "based on the most current information available to TRSL," as stated in TRSL's publication. The evidence further demonstrates that TRSL took no action to notify Coady regarding the missing retirement affidavit between the effective date of her retirement and the date of her death.
TRSL urges that a genuine issue of material fact remains as to whether TRSL mailed the retirement affidavit to Coady. *956 Latiolais's affidavit, which addressed the fact that Coady never received a retirement affidavit from TRSL, effectively shifted the burden to TRSL to establish that it did in fact mail this affidavit to Coady. The deposition testimony submitted by TRSL in opposition to Latiolais's motion for summary judgment failed to establish that the retirement affidavit was in fact mailed to Coady or that Coady actually received the affidavit. The fact that TRSL prepared a worksheet, generated a retirement affidavit, or that its normal procedure was to do these things, does not establish that the affidavit was in fact mailed to Coady. Thus, because TRSL has failed to produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial, i.e., that it actually mailed the retirement affidavit to Coady; there is no genuine issue of material fact as to this issue.
Accordingly, based on the particular facts of this case, i.e., that TRSL failed to establish that it mailed the retirement affidavit to Coady, and it failed to request a completed retirement affidavit from Coady after the effective date of her retirement, we conclude La. R.S. 11:783 H is inapplicable, and TRSL cannot refuse to pay a monthly survivor benefit based on the lack of the completed affidavit. Moreover, the evidence establishes that Coady, pursuant to her application for service retirement, expressed her specific intent that Latiolais would in fact receive a "monthly survivor benefit," according to the specific language included within the application and Coady's designation of Latiolais as her beneficiary.
TRSL also assigns as error the trial court's failure to grant its motion for new trial where it presented new evidence, i.e., Keith Kent's affidavit, in connection with that motion.[7] Louisiana Code of Civil Procedure article 1972(2) provides that a new trial shall be granted when the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial. Although TRSL submitted Kent's affidavit, it provided no reason why the affidavit could not have been obtained before the trial court heard Latiolais' motion for summary judgment. Accordingly, we find no error in the trial court's denial of the motion on that ground.
Otherwise, TRSL submits that the trial court should have granted a new trial because the summary judgment in favor of Latiolais was contrary to the law and evidence. La. C.C.P. art. 1972(1). TRSL argues that Latiolais failed to establish that TRSL has an obligation to pay her an Option 2 benefit, and consequently Latiolais is not entitled to judgment as a matter of law. TRSL also urges that the trial court should have granted a new trial on discretionary grounds pursuant to La. C.C.P. art. 1973.
Based on the facts of this case where the retirement affidavit was not provided to Coady, and thus, there is no completed affidavit as referenced in La. R.S. 11:783 H, we conclude it is necessary to otherwise ascertain Coady's intent. We find, based on Coady's application for service retirement, that she intended that Latiolais would receive a "monthly survivor *957 benefit." Accordingly, the trial court properly declared that Latiolais was entitled to receive such a monthly benefit after Coady's death based on the provisions of La. R.S. 11:78 A(2). Further, when Coady filled out the application, she struck through Sections 2, 5, and 6 of the application, which referenced an "Initial Lump Sum Benefit." Thereby, we conclude that she also rejected such a benefit. However, the record does not contain sufficient information from which we can determine that Coady intended to elect Option 2 rather than the other options that would also provide a monthly survivor benefit, i.e., Options 2A, 3, 3A, 4, and 4A. See La. R.S. 11783 A; La. R.S. 11:701(3) and (28). In this respect, we find merit in TRSL's argument.
Latiolais's brief relates that Coady suffered from cancer that had been in full remission, and when it reappeared she knew it would produce a terminal situation. However, the record before us contains no evidence regarding her illness. Facts regarding the nature and severity of Coady's illness, when she learned of her illness, and its progression at the time of her application for retirement would be pertinent in determining Coady's intent. Accordingly, while we find that the record establishes that Latiolais is entitled to a "monthly survivor benefit," the record does not establish whether Coady intended to select Option 2 instead of Options 2A, 3, 3A, 4, or 4A. Thus, we reverse that portion of the trial court's judgment that declared that Latiolais was entitled to Option 2 retirement benefits, and we remand for further proceedings so that the trial court can make a determination regarding Coady's intent with respect to these particular options that will afford Latiolais a monthly survivor benefit.

III. CONCLUSION
For these reasons, we affirm the trial court's judgment insofar as it ordered TRSL to pay Latiolais a monthly survivor benefit pursuant to La. R.S. 11:783 A(2). We reverse that portion of the trial court's judgment that ordered TRSL to pay Latiolais Option 2 retirement benefits. We remand to the trial court for further proceedings in accordance with our instructions herein. Appeal costs in the amount of $1,826.50 are assessed against TRSL.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
GUIDRY, J., dissents and assigns reasons.
GAIDRY, J., concurs in part and dissents in part for the reasons assigned by GUIDRY, J.
GUIDRY, J., dissenting.
A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
Both Latiolais and TRSL rely on circumstantial evidence[1] to support their opposing positions concerning whether a retirement affidavit was provided to Coady. Furthermore, the evidence, as presented, is conflicting. See Independent Fire Insurance Company v. Sunbeam Corporation, 99-2181, p. 18 (La.2/29/00), 755 So.2d *958 226, 236-237 (wherein the Court held that it could not conclude that the scintilla of circumstantial evidence presented by the party opposing the motion for summary judgment to support its position was insufficient to allow a reasonable juror to conclude that the opposing party's position was more likely than not true.)
A genuine issue is a triable issue. More precisely, an issue is genuine if reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. In determining whether an issue is genuine, courts cannot consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. Smith v. Our Lady of the Lake Hospital Inc., 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751; Dunaway v. Louisiana Wildlife and Fisheries Commission, 08-1494, p. 4 (La.App. 1st Cir.2/13/09), 6 So.3d 228, 231-232.
In Cole v. Lavine, 595 So.2d 398 (La. App. 3d Cir.1992), a similar factual issue was presented in an action in which the plaintiff alleged that because the insurer failed to provide the required statutory notice communicating its intent to renew, the insurer was precluded from asserting that the policy at issue was not in effect at the time of the accident sued upon. Like the TRSL in the matter before us, the insurer was unable to produce actual proof that it mailed the notice of intent to renew, but instead submitted computer records which showed that a notice of intent to renew the insureds' policy was generated by the computer on a certain date. In opposition to this evidence, the plaintiff submitted the affidavit of the administrator of the estate of the deceased insureds in which the administrator stated that he had searched the personal effects of the deceased insureds and found no offer to renew from the insured. The court held that because the evidence was conflicting as to whether the notice was sent, a genuine issue of material fact existed regarding the mailing of the notice and therefore summary judgment could not be granted. Cole, 595 So.2d at 400; Cf. Jacobs v. Louisiana Indemnity Insurance Company, 96-1203 (La.App. 3d Cir.3/12/97), 692 So.2d 1182, writ denied, 97-0958 (La.5/16/97), 693 So.2d 802 (where the court held that on a trial on the merits, the evidence presented by the insurer of its standard procedures for mailing of the notice was sufficient to prove that the notice was mailed and therefore the insurer was held to have complied with the statutory requirements of sending notice of cancellation, despite the failure to produce evidence of actual mailing and the insured's denial that he had received such notice).
As the circumstantial evidence submitted by Latiolais that Coady never received a retirement affidavit from TRSL (Latiolais's affidavit and excerpts of Forbes' deposition) conflicts in a material respect with the circumstantial evidence submitted by TRSL (Forbes's entire deposition and Mazie's affidavit), the majority, like the trial court, had to improperly weigh and evaluate the evidence presented to reach the conclusion that TRSL did not provide Coady with a retirement affidavit. As the fact of whether TRSL provided Coady with a retirement affidavit is highly disputed, a determination of this factual issue should be reserved for a trial on the merits, and to the extent the majority opinion affirms the trial court's resolution of this issue by summary judgment, I respectfully dissent.
NOTES
[1] This publication was produced by Carolyn Forbes, TRSL's retirement benefits manager, in response to a subpoena duces tecum, which she replied to in conjunction with her December 4, 2006 deposition. This publication was identified as an exhibit during Forbes's deposition, but it does not appear as an attachment to the deposition contained within our appellate record. The publication was otherwise filed into the record, however, as an exhibit in support of Latiolais's motion for summary judgment. Because both parties referenced the publication in their trial memoranda and in their appellate briefs and do not dispute its contents, we have considered the contents of the publication for purposes of this appeal.
[2] This affidavit states that Mazie: 1) held the position of an administrative program manager at TRSL; 2) his duties included overseeing TRSL's mail operations; and 3) was familiar with the process by which Affidavits of Retirement Option Election and other TRSL documents are mailed, with such documents being placed in an envelope and addressed by the retirement processor. The affidavit further sets forth that the envelope and its contents are placed in a collection box, and the following morning mail operations picks up the item and takes it to a meter, which is set for first class mail. After the correct postage is applied to the item, an Operation State Mail representative picks up the item and takes it to the Operation State Mail Office, where a postal carrier picks up the item between 3:00 and 3:30PM and takes it to the post office.

Latiolais filed a motion to strike Mazie's affidavit, challenging the affidavit as failing to meet the requirements of supporting affidavits, as mandated by La. C.C.P. art. 967, i.e., particularly that the affidavit was not based on personal knowledge. The record does not contain a ruling by the trial court on this motion. We do not agree, however, that the affidavit should be struck pursuant to the guidelines of La. C.C.P. art. 967, because it appears that the affidavit was based on Mazie's personal knowledge of TRSL mail operations. We find, however, that Mazie's affidavit is general in nature and does not establish that he had knowledge of TRSL's mail operations during the specific time period in question. Accordingly, due to this deficiency, we find Mazie's affidavit irrelevant to the issue of whether TRSL mailed the affidavit to Coady between the time she filed her application for service retirement in August 2002, and the time of her death in February 2003.
[3] Forbes explained that a working copy of the unexecuted affidavit was typically held at the analyst's desk until the notarized affidavit came into the office. Coady's file did not contain this working affidavit, and Forbes explained that because Coady's date of death occurred so quickly after she applied for retirement, TRSL probably destroyed the working affidavit when it started processing the claim as a death-benefit claim.
[4] Although Forbes produced the worksheet in response to a request for production of documents solicited in conjunction with her deposition, the worksheet does not appear in our record.
[5] TRSL's fiduciary duties include the duty to provide retirees sufficient information to make an informed decision in electing a retirement option. See La. R.S. 11:702; Honda v. Bd. of Trustees of the Employees' Retirement System of the State, 108 Hawai'i 212, 221, 118 P.3d 1155, 1164 (6/17/05); Ricks v. Missouri Local Gov't Employees' Retirement System, 981 S.W.2d 585, 592 (Mo.App.W.D.9/29/98).
[6] According to Forbes's deposition testimony, the retirement affidavit has never been made available to members in a publication as a form document because members must have member-specific information on the retirement affidavit for them to be able to complete it.
[7] Kent's affidavit set forth that: 1) he was the administrative manager for TRSL from September 14, 1998, to October 16, 2006; 2) his duties included overseeing TRSL's mail operations; and 3) he was familiar with the process by which Affidavits of Retirement Option Election and other TRSL documents were mailed during that time period. The affidavit further described the particular mailing process typically used by TRSL, which was the same procedure described by Mazie.
[1] Circumstantial or indirect evidence is evidence that, if believed, proves a fact and from that fact you may logically and reasonably conclude that another fact exists. Independent Fire Insurance Company v. Sunbeam Corporation, 99-2181, p. 18 n. 6 (La.2/29/00), 755 So.2d 226, 236 n. 6.